## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK and LORI FUEHRER, on behalf of themselves and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. |
| vs. | ) ) |
| NESTLE PURINA PETCARE CO., a Missouri Corporation, | ) ) ) |
| Defendant. | ) ) |

### CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY

### INTRODUCTION

1.     Plaintiffs Mark and Lori Fuehrer bring this class action complaint against Defendant Nestle Purina Petcare Co. ("Defendant"), which owns and operates a pet food manufacturing facility located at 2050 Pope Road in Allentown, Pennsylvania (the "Facility").

2.     Through its operation of the Facility, Defendant released, and continues to release, noxious odors that invade Plaintiffs' property, causing property damage through nuisance and negligence.

### PARTIES

3.     At all times relevant hereto, Plaintiffs Mark and Lori Fuehrer have been citizens of Pennsylvania and have resided and intend to remain at 2359 Wehr Mill Road, Allentown, Pennsylvania.

4.     Defendant Nestle Purina Petcare Co. is a for-profit company incorporated in the State of Missouri, with its principal place of business in Missouri. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Missouri.

5.     Defendant's pet food manufacturing facility is located in Lehigh County, 2050

Pope Road, Allentown, PA.

6.      Upon information and belief, Defendant, including its predecessors and agents, constructed the Facility and exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(a). Jurisdiction is proper because the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

## GENERAL ALLEGATIONS

8.      Defendant operates an industrial pet food manufacturing facility surrounded by residential properties.

9.      Plaintiffs reside within 1.75 miles of the Facility's property boundary.

10.     Plaintiffs' property has been and continues to be physically invaded by noxious odors.

11.     The noxious odors which entered Plaintiffs' property originated from Defendant's Facility.

### *Defendant's Industrial Pet Food Manufacturing Process*

12.     Defendant's industrial operations at the Facility include the production of pet food products.

13.     Defendant's pet food products include animal-derived raw proteins and animal fats, many of which are highly odiferous.

2

14.     Defendant mixes the raw ingredients according to numerous pet food recipes, which are dried and formed into a dough.

15.     The dough for each pet food product is then cooked and extruded into its kibble shape.

16.     Defendant's cooking process produces highly odiferous emissions.

17.     In July 2017, Defendant began utilizing a new cooking operation that caused a substantial increase in the odors produced by the Facility.

18.     The pet food products then undergo a drying process prior to being packaged and sold.

19.     Defendant's facility has discharge stacks, through which its emissions are released into the ambient air surrounding the Facility.

20.     Defendant's industrial operations also produce substantial quantities of organic waste that must be disposed.

21.     The waste products are initially disposed on-site.

22.     Defendant's industrial operations produce substantial quantities of excess wastewater containing highly odiferous organic matter.

23.     Defendant maintains an on-site wastewater treatment operation, which is a substantial contributing factor to the noxious odors generated by the Facility.

*Defendant's Noxious Fumes and Emissions*

24.     The emissions produced by Defendant's cooking process and wastewater treatment operations are noxious and highly odiferous.

25.     Defendant has acknowledged on multiple occasions that the Facility, specifically the cooking operation and the wastewater treatment process, are the source of the odors invading

3

Plaintiffs' property.

26.     Defendant has represented to the media and to the public that its Facility is the source of the odors and that the cause of the odors related to its failure to properly control and mitigate odors generated by its cooking process and wastewater treatment operations.

27.     The odors caused by the Facility have been and continue to be dispersed across all public and private land in the class area.

28.     A properly designed, operated, and maintained pet food manufacturing Facility will adequately capture, remove, and dispose excess noxious emissions and will not emit noxious odors into the ambient air as fugitive emissions.

29.     A properly designed, operated, managed, and maintained industrial wastewater management system will not emit noxious odors into the ambient air as fugitive emissions.

30.     Defendant is required to control its odorous emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigate odorous emissions so as to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available odor mitigation, elimination, and control systems at the Facility.

31.     Defendant has failed to install, maintain, operate, develop, and/or implement adequate odor mitigating strategies, processes, technology, and equipment to control its odorous emissions from the Facility and/or wastewater treatment facilities and prevent those odors and emissions from invading the homes and properties of Plaintiff and the putative Class.

32.     Defendant's failures to prevent noxious off-site odors included, but are not limited to: operating and maintaining inadequate systems for processing wastewater and organic sludge; operating and maintaining a pet food cooking process that inadequately captures, controls, and/or

4

mitigates odors; failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air; inadequately disposing of the organic waste and sludge produced by its manufacturing process; failing to develop and/or implement an adequate odor prevention plan; failing to utilize other odor prevention, elimination, and mitigation measures and technology available to Defendant; and/or other failures revealed during discovery.

### *Impacts of Defendant's Actions and Omissions on Plaintiff and the Putative Class*

33.     The Facility and its odorous emissions have been the subject of frequent complaints from residents in the nearby residential area.

34.     More than 60 households within the proposed Class Area have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's Facility.

35.     Plaintiffs Mark and Lori Fuehrer reported that because of Defendant's odors "it prohibits use of deck or activities at times. Sometimes you can smell in the house."

36.     Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have damaged their neighboring properties.

   a.     Putative class member Cesar Abourjado reported that "[i]t's horrible when we smell it make us sick and our kids they have to stay inside instead of enjoying the outside[.] [I]nstead of enjoying the outside weather and activities sometimes we have to leave the house to take the kids somewhere where they can enjoy outdoor activities."

   b.     Putative class member Lina Ackerman reported that "[t]he smells that carries from Purina are absolutely horrible! They are of dead animal smelling. You cannot at times sit outside on the porch & in the house if you have windows opened…I hope you can find a way to have this horrible odor disappear so we can enjoy our neighborhood!"

   c.     Putative class members Brenda and Mark Adam reported that "[i]t is awful! Smells like dead animals/sewer … We love the outdoors and it makes me sick to my stomach."

5

d.      Putative class member Cindy Smith reported that "[f]or years a smell of decaying or rotting material has come from the plant. On days that it is BAD we must close the windows and come inside. It is hard to have outside parties and hope there is no smell."

e.      Putative class member Mark Benedict reported that they "cannot keep windows open in spring or fall. Cannot sit on deck."

37.     Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

a.      Numerous resident complaints to South Whitehall Township and the Pennsylvania Department of Environmental Protection directly attributing noxious odors to Defendant's Facility.

b.      Numerous media reports regarding Defendant's odors and emissions.

c.      Multiple public hearings held before the South Whitehall Township Board of Commissioners where residents complained regarding Defendant's odors. Defendant's representatives, including Gopi Sandhu, Defendant's Director of Engineering and Sustainable Operations, and Factory Manager Winston Silva, have both publicly acknowledged at such meetings that the Facility had odor problems. At one such hearing, Mr. Sandhu attributed the odor problem to a new cooking operation that Defendant began in July 2017 and Defendant's wastewater treatment process.

38.     Defendant's Facility has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of its property.

39.     The Facility has emitted objectionable odors that have caused negative impacts to its neighbors throughout the Class Area.

40.     Plaintiffs and members of the putative class suffer serious discomfort because of Defendant's noxious odors that interferes with their use and enjoyment of property.

41.     The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage.

42.     The invasion of Plaintiffs' property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property,

6

resulting in damages.

43.     The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

44.     Plaintiff and the Class are a limited subset of individuals in Lehigh County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

45.     Members the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

46.     Defendant negligently and knowingly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the invasion of Plaintiffs' property by noxious odors on unusually frequent, intermittent and ongoing reoccurring occasions.

**CLASS ALLEGATIONS**

A.     **Definition of the Class**

47.     Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and three quarters of a mile (1.75) of the Facility's property boundary.**

7

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").  Excluded from the Class are Defendant and its affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons.  Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

48.     This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

> a.   The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;
>
> b.   There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;
>
> c.   Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;
>
> d.   The claims of the representative parties are typical of the claims of the Class;
>
> e.   A class action provides a fair and efficient method for adjudication of the controversy;
>
> f.   The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;
>
> g.   There are no unusual difficulties foreseen in the management of this class action; and
>
> h.   Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B.     Numerosity**

49.     The approximate number of residential households within the Class Area is over 2,000.

50.     The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

**C.     Commonality**

51.     Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a.     whether and how Defendant negligently and knowingly failed to design, operate, and maintain the Facility and its operations;

b.     whether Defendant owed any duties to Plaintiffs;

c.     which duties Defendant owed to Plaintiffs;

d.     which steps Defendant has and has not taken in order to control the emission of noxious odors through the design, operation, and maintenance of its Facility and its respective operations;

e.     whether Defendant met its standard of care with respect to its operation, design, and maintenance of the Facility and its operations;

f.     whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

g.     whether it was reasonably foreseeable that Defendant's failure to properly design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiffs' property interests;

h.     whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

i.     the proper measure of damages incurred by Plaintiffs and the Class.

**D.     Typicality**

52.     Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the

9

same legal theories and seek the same type of relief.

53.     The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

54.     All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

**E.     Adequacy of Representation**

55.     Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

56.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

**F.     Class Treatment Is a Fair and Efficient Method of Adjudication**

57.     A class action is a fair and efficient method of adjudication of the controversies raised in this Complaint because:

      a.     Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

      b.     Individual claims by class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would present Defendant with incompatible standards of conduct;

      c.     Individual claims by individual members of the class would create a risk of adjudications which would as a practical matter be dispositive of the

interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

d.      Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e.      In view of the complexity of the issues or the expenses of litigation, the separate claims of individual members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f.      Plaintiffs seek equitable relief relating to Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the class as a whole;

g.      The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h.      The proposed class action is manageable.

58.     The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

59.     Notice can be provided to members of the Class by U.S. Mail and/or publication.

## I.  CAUSES OF ACTION ONE AND TWO

### PUBLIC AND PRIVATE NUISANCE

60.     Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

61.     Plaintiffs utilized their property as a residence and reside within the Class Area.

62.     The noxious odors which entered Plaintiffs' property originated from Defendant's

Facility, which was in close proximity.

63.     By failing to reasonably design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

64.     The noxious fumes and odors invading Plaintiffs' property are indecent and offensive to Plaintiffs, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

65.     Defendant knew that it was emitting noxious odors onto neighboring properties, yet failed to take reasonably adequate steps to abate the nuisance.

66.     Defendant owed and continue to owe a duty to Plaintiffs and the Class to prevent and abate the interference with, and the invasion of, their private interests.

67.     Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious pollutants into the ambient air.

68.     As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein.

69.     By causing noxious odors that physically invaded Plaintiffs' property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiffs' use and enjoyment of their property on unusually frequent occasions too numerous to mention individually.

70.     Such substantial and unreasonable interference includes, but is not limited to:

a.      loss of use and ability to enjoy the outside areas of Plaintiffs' property or to open windows due to the presence of noxious odors;

b.      decrease in the value of Plaintiffs' property; and

12

c.     annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows when odors are present, inability to use outdoor spaces, and the inability to invite guests to Plaintiffs' residence due to the embarrassment and annoyance of the noxious odors invade Plaintiffs' property.

71.     Apart from the private property damage incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

72.     Plaintiffs suffered and continue to suffer special harm relating to the use and enjoyment of their land and property, and decreased property values—damages of a different kind that are additional to those suffered by the public at-large.

73.     Plaintiffs did not consent to noxious odors entering upon their property.

74.     Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

75.     Defendant's substantial and unreasonable interferences with Plaintiffs' property rights constitute a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## II.  CAUSE OF ACTION THREE

### NEGLIGENCE

76.     Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

77.     On occasions too numerous to mention, Defendant negligently and improperly designed, operated, repaired, and/or maintained its Facility and its operations, causing fugitive

13

emissions to escape into the ambient air and invade Plaintiffs' home, land, and property.

78.     Defendant owed Plaintiffs, as neighboring landowners, a duty of care with regard to its operation and maintenance of the Facility.

79.     As a direct, proximate, and foreseeable result of Defendant's negligence in operating and maintaining the Facility, Plaintiffs' property, on occasions too numerous to mention, was physically invaded by noxious odors.

80.     As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiffs suffered damages to their property as alleged herein.  Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiffs' property and diminution in the value of Plaintiffs' property.

81.     By failing to properly operate and/or maintain its Facility, and its concomitant operations and processes, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiffs' property.

82.     By failing to maintain and operate its Facility, and its concomitant operations and processes, Defendant has caused the invasion of Plaintiffs' property by noxious odors.

83.     Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its Facility and knew or should have known upon reasonable inspection that such actions would—and did—cause Plaintiffs' property to be invaded by noxious odors.

84.     As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences have been and continue to be physically invaded by noxious odors.

85.     After learning about its noxious emissions, Defendant failed to take reasonably adequate steps to abate the conditions causing damages to Plaintiffs' property.

14

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.      Certification of the proposed Class by order pursuant to Federal Rule of Civil Procedure 23;

B.      Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.      Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D.      An award, to Plaintiffs and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E.      An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted a nuisance;

F.      An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G.      Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues raised in this Complaint.

Dated: August 10, 2020

Respectfully submitted,

Kevin S. Riechelson
KAMENSKY COHEN & RIECHELSON
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com

Steven D. Liddle*
Laura Sheets*
Matthew Z. Robb*
*Pro Hac Vice Motions to be Submitted
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
lsheets@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiff and the putative Class*

16