# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK and LORI FUEHRER, on behalf of themselves and all others similarly situated, | : : : : | |
| Plaintiffs, | : : | Case No. 5:20-cv-03910 The Honorable Edward G. Smith |
| v. | : : : | |
| NESTLÉ PURINA PETCARE COMPANY, | : : : : | |
| Defendant. | : : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Kevin S. Riechelson
Attorney I.D. 58960
**KAMENSKY COHEN & RIECHELSON**
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com

Steven D. Liddle*
Nicholas A. Coulson*
Matthew Z. Robb*
*Admitted Pro Hac Vice*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
lsheets@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiffs and the putative Class*

## Table of Contents

**Page**

INDEX OF AUTHORITIES...................................................................................................... iii

I.    INTRODUCTION .........................................................................................................1

    A.    Description of Plaintiffs' Claims ........................................................................1

    B.    Summary of the Litigation .................................................................................2

    C.    Terms of the Proposed Settlement .....................................................................3

II.   ARGUMENT .................................................................................................................4

    Legal Standard .............................................................................................................4

    A.    The Court is Likely to Ultimately Approve the Settlement as Fair, Reasonable, and Adequate ...........................................................................................................6

        1.    The Class Representatives and Class Counsel Have Adequately Represented the Class ...........................................................................6

        2.    The Costs, Risks and Delay of Trial and Appeal. ............................7

        3.    The Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims ...........................10

        4.    The Terms of the Proposed Award of Attorney's Fees....................11

        5.    The Proposal was negotiated at arms-length ...................................12

    B.    The Court Is Likely To Certify the Class for Settlement Purposes .......................12

        1.    The Settlement Class is Ascertainable...............................................13

        2.    The Settlement Class Satisfies the Numerosity Requirement...........14

        3.    The Settlement Class Satisfies the Commonality Requirement .......15

        4.    The Settlement Class Satisfies the Typicality Requirement.............16

        5.    The Settlement Class Satisfies the Representation Requirement ...................17

        6.    Rule 23(b) is Also Satisfied ..............................................................18

i

7. The Settlement Class Satisfies the Predominance Requirement......................19

8. The Settlement Class Satisfies the Superiority Requirement .........................20

C.    The Proposed Notice is the Best Practicable Under the Circumstances...............21

CONCLUSION..............................................................................................................................21

## Table of Authorities

Page

**Cases**

*Alley v. Western Sugar Cooperative*, District Court, County of Morgan Case
No. 2017-cv-30078 ...................................................................................................9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ............................12

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) ........................................................13

*Curiale v. Lenox Grp. Inc.*, No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .............13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................20

*Fleisher v. Fiber Composites, LLC*, 2014 U.S. Dist. LEXIS 29151 (E.D. Pa. March 5, 2014)
................................................................................................................21

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ....................................5, 14

*Hamilton v. 3D Idapro Solutions, LLC*, United States District Court Western District of
Wisconsin Case No. 18-cv-54-jdp ..........................................................................7, 9

*Harry M. v. PA Dept. of Public Welfare*, No. 10-cv-922, 2013 WL 1386286
(M.D. Pa. Apr. 4, 2013) ........................................................................................4

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) ........................................13

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, PNC Bank NA,
2015 U.S. App. LEXIS 13186 (3d Cir. 2010). ..................................13, 15, 17, 18, 19

*In re GMC Pick-Up Truck Fuel Tank Prods.* Liab. Litig., 55 F.3d 768 (3d. Cir. 1995) ...............5

*In re: Pet Food Prods.* Liab. Litig., 629 F.3d 333 (3d Cir. 2010) ....................................5

*Keech and Newfield v. Sanimax USA, LLC*, United States District Court District of Minnesota
Case No. 18-cv-683 .............................................................................................9

*King Drug Co. of Florence v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 97319
(E.D. Pa. July 27, 2015) ...........................................................................14, 16, 17, 19

*Local Joint Exec. Bd. V. Las Vegas Sands, Inc.* 244 F.3d 1152 (9th Cir. 2001), cert denied, 534
U.S. 973 (2001) ................................................................................................18

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ......................................16

iii

*Neale v. Volvo Cars of N. Am., LLC*, 2015 U.S. App. LEXIS 12629
(3d Cir. N.J. July 22, 2015) ..................................................................................18

*Noye v. Yale Assocs.*, 2019 U.S. Dist. LEXIS 138366, *6-8, 2019 WL 3837507 (M.D. Pa. Aug. 15, 2019) ..................................................................................5

*Plass, et al v. Sanimax USA, LLC*, Brown County Wisconsin Circuit Court Case No. 2015-cv-000165..................................................................................9

*Ponca Tribe of Indians v. Cont'l Carbon Co.*, 2007 WL 28243 (W.D. Okla. Jan. 3, 2007) ........20

*Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d. 402 (E.D. Pa. May 7, 2010) ............................5

*Stanley v. U.S. Steel Co.*, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006) ....................................18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................8, 12, 15

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975) ........................................................17

*Woods v. Marler*, 2018 U.S. Dist. LEXIS 47044, 2018 WL 1439591 (E.D. Pa. March 22, 2018) ..................................................................................7

## Rules

Fed. R. Civ. P. 23(a) ..................................................................................12

Fed. R. Civ. P. 23(a)(1) ..................................................................................14

Fed. R. Civ. P. 23(b)(3) ..................................................................................18, 19

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................4

Fed. R. Civ. P. 23(e)(2) ..................................................................................4

## INDEX OF EXHIBITS

**Exhibit A** – Settlement Agreement

    **SA Exhibit 1** – [Proposed] Final Judgment and Order of Dismissal

    **SA Exhibit 2** – Class Boundary Map

    **SA Exhibit 3** – [Proposed] Order of Preliminary Approval of Class Action Settlement

    **SA Exhibit 4** – Longform Mail Notice

    **SA Exhibit 5** – Publication Notice

    **SA Exhibit 6** – Claim Form

**Exhibit B** – Declaration of Steven D. Liddle

**Exhibit C** – Proposed Order of Preliminary Approval of Class Action Settlement

## I.      INTRODUCTION

Plaintiffs brought this action on behalf of themselves and a proposed class of their neighbors, alleging that odorous emissions from Defendant's pet food manufacturing facility have entered upon their properties, interfering with their ability to use and enjoy their homes.  Following an extensive investigation by Plaintiffs' experienced counsel, informal discovery between the parties, and a full-day mediation before a neutral mediator, the Honorable Diane M. Welsh (ret.), the parties are pleased to report that they have reached a compromise and hereby present the Court with the attached proposed Settlement Agreement. Plaintiffs now request that this Honorable Court preliminarily approve this mutually negotiated Settlement Agreement by entering the attached proposed order, which is attached to the Settlement Agreement as **Exhibit C.**[1]

### A.      Description of Plaintiffs' Claims

Plaintiffs are residents of the area surrounding Defendant's Nestlé Purina Petcare Company ("Defendant") pet food manufacturing facility in Allenton, Pennsylvania (the "Facility"). Plaintiffs' Complaint alleged that Defendant has failed to control the emissions that were generated through its production of pet food products. Plaintiffs further alleged that on frequent and recurring occasions, these odorous emissions entered onto their properties and interfered with their ability to use and enjoy their homes and diminished the value of their properties. Plaintiffs seek to certify a class consisting of:

> The named Plaintiffs and all persons who, at any time during the Settlement Class Period, either:
>
> (i)     Owned and occupied a residential property within the Settlement Class Area; or

---

[1] The proposed order is also attached to the Settlement Agreement as Exhibit 3.

(ii)     Resided within a residential property within the Settlement Class Area.[2]

Notwithstanding the foregoing, the following persons are excluded from the "Settlement Class": (i) officers, directors, and members of the Boards of Defendant; (ii) the presiding judicial officer (Honorable Edward G. Smith) and his staff; and (iii) Class Counsel, counsel for Defendant, and their respective staffs.

### B.     Summary of the Litigation

Plaintiffs filed the Complaint in this case on August 11, 2020 following an extensive pre-suit investigation by Counsel. (Doc. No. 1) (**Ex. A**, Settlement Agreement, pg. 2, ¶10).  The pre-suit investigation included Right to Know Act requests to the City of Allentown, Pennsylvania, the Pennsylvania Department of Environmental Protection, and South Whitehall Township and a comprehensive review of the records thereby obtained.  (**Ex. B**, ¶6). Plaintiffs Counsel also obtained and reviewed reports from members of the putative class regarding the alleged conditions that would become the subject of the complaint filed in this Court on August 11, 2020.

The Complaint sought money damages and injunctive relief for the Named Plaintiffs and others similarly situated, asserting claims in three separate counts for public nuisance, private nuisance, and negligence.  (**Ex. A**, pg. 3, ¶1). Despite Defendant's denial of Plaintiffs' claims of wrongdoing, the parties agreed to begin good faith settlement discussions.  To that end, Counsel for Defendant and Class Counsel voluntarily participated in a full-day mediation with Honorable Diane M. Welsh (ret.), formerly a Magistrate Judge of this Court. (**Ex. A**, pg. 3, ¶3). As a result of this mediation, which involved arm's-length negotiations between counsel experienced in these

---

[2] The area enclosed by a geographic boundary consisting of the one and three quarters of a mile radius from the Facility's property boundary, as shown on the map attached to the Settlement Agreement as **Exhibit 2**.

matters with the assistance of an experienced mediator, counsel agreed to settle the claims asserted in the Complaint on the terms and conditions set forth herein, subject to the Court's review and approval. (*Id.*) As a result of the daylong mediation, the parties were able to agree to the essential terms of the settlement that is now presented to the Court, which both parties' experienced counsel agree represent the best interest of the parties under the circumstances, given the time, complexity, and expense this litigation would surely present absent this agreement.

### C.   Terms of The Proposed Settlement

Under the proposed Settlement Agreement[3] (**Ex. A**), Defendant will be required to provide monetary relief to the Class, in exchange for which the Class will release certain claims against Defendant. Defendant will create a common fund for the benefit of the Class in the amount of $800,000, which will be distributed on an equal basis to Class Members who timely submit an approved claim form after the payment of costs, attorney fees, and incentive awards, such as the Court may approve. (*Id.*, pg. 10, ¶8). The proposed settlement includes a full release and discharge by Plaintiff and each Class Member of any and all claims that were, or could have been, asserted against the Releasors between August 11, 2018 ("Class Period") and the Effective Date of the Settlement[4]. (*Id.*, pg. 2 ¶ 7, pg. 3, ¶ 12). The Release expressly preserves the Class Members' right to bring any claims for personal injuries and/or any claims based on odors or other airborne emissions that occur after the date of the Final Judgement and Order of Dismissal. (*Id.*, pg. 14 ¶

---

[3] Capitalized terms shall have the same meaning here as assigned to them in the Settlement Agreement.

[4] See the Settlement Agreement at page 13-14 ¶15 for specific definitions of the "Releasors" and the "Released Parties."

15). However, the Release binds all Class Members who fail to opt-out of the settlement from suing Defendant relating to the allegations made in the Action. (*Id.*, pg. 14 ¶ 16).

The Settlement Agreement calls for Class Counsel to administer the settlement and requires that notice be sent to the residential addresses within the Class Area by first class mail within fifteen (15) days of preliminary approval. (*Id.* ¶4(a)); *see also* **Ex A (4)**, Class Notice). A copy of the short form notice attached hereto as **Exhibit A (5)** will also be published in the legal notice section of the Morning Call, a newspaper of general circulation in the Class Area.

From the date notice is mailed, Class Members will have sixty (60) days to object to or opt out of the Settlement. (**Ex. A**, pg. 8, ¶ 5). Class Members will also have sixty (60) days from the date Notice is mailed to submit a valid timely Proof of Claim to Class Counsel for a pro rata share of the common fund. (*Id.*, pg. 11, ¶9; **Ex. A (6)**, Claim Form). After deducting attorneys' fees, costs, and any incentive awards to the named Plaintiffs, the common fund will be divided equally among all households of Class Members who submit timely claim forms that are approved by Class Counsel as complying with the requirements set forth in the notice. (**Ex. A**, pg. 10, ¶8(a)-(c)). The Settlement Agreement provides for requests of a Named Plaintiff Incentive Award in an amount not to exceed $1,000 (*Id.*, pg. 9, ¶7), and Class Counsel may seek payment of costs and attorneys' fees not to exceed one-third of the Gross Settlement Proceeds and the Settlement is not contingent on any amount being awarded to Plaintiffs or Class Counsel. (*Id.*)

## II.    ARGUMENT

### Legal Standard.

"Review of a proposed class action settlement involves a two-step process:  preliminary approval and a subsequent fairness hearing." *Harry M. v. PA Dept. of Public Welfare*, No. 10-cv-922, 2013 U.S. Dist. LEXIS 48758, *3, 2013 WL 1386286 (M.D. Pa. Apr. 4, 2013). The first step

4

is a preliminary, pre-notification hearing to determine whether "the Court will likely be able to: (i) approve the proposal under Fed. R. Civ. P. 23(e)(2); and (ii) certify the Settlement Class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

"A court's decision to preliminarily approve a proposed class action settlement 'is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies, and the settlement falls within the range of reason.'" *Noye v. Yale Assocs.*, 2019 U.S. Dist. LEXIS 138366, *6-8, 2019 WL 3837507 (M.D. Pa. Aug. 15, 2019) (quoting *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008)) (internal quotations and citation omitted). Essentially, "the preliminary approval process entails a determination of whether notice to the class and the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile." *Noye*, 2019 U.S. Dist. LEXIS 138366 at *6-8, 2019 (citations omitted). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.* (internal quotation omitted).

The Third Circuit has repeatedly recognized the "overriding public interest in settling class action litigation." *In re: Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) (citations omitted). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GMC Pick-Up Truck*, 55 F.3d at 784. Courts have discretion "in determining whether to approve a proposed class action settlement...This discretion is conferred in recognition that '[t]he evaluation of [a] proposed settlement in this kind of litigation... requires an amalgam of delicate balancing, gross

5

approximations and rough justice.'" *Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d. 402, 414 (E.D. Pa. May 7, 2010).

**A.    The Court is Likely to Ultimately Approve the Settlement as Fair, Reasonable, and Adequate.**

For the first requirement of preliminary approval, Rule 23(e)(1)(B)(i) directs the Court to the factors relevant to final approval. A court must determine whether the proposed settlement is likely to be considered 'fair, reasonable, and adequate' after evaluating the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, [and] . . .
>
> (D) the proposal treats class members equitably relative to each other.

Each of these factors is satisfied here. Plaintiff and their counsel have zealously represented the Class and negotiated an arm's length Settlement Agreement that secures beneficial and ample relief while treating members of the Class equitably relative to one another. The Court will therefore likely approve the Settlement Agreement as fair, adequate, and reasonable once the Class has received notice and has been presented with the opportunity to provide its views on the agreement.

**1.    The Class Representatives and Class Counsel Have Adequately Represented the Class.**

To determine whether the settlement provides adequate relief to the class, Rule 23(e)(2)(C) instructs the Court to consider:

> (i)    the costs, risks, and delay of trial and appeal;

6

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3).

Plaintiffs' counsel is indeed "qualified, experienced, and generally able to conduct" litigation of this sort, as it has done many dozens of times in similar cases in the past. *See Woods v. Marler*, 2018 U.S. Dist. LEXIS 47044, *11, 2018 WL 1439591 (E.D. Pa. March 22, 2018).  As one federal court noted in a similar case, involving a similar settlement:

> Class Counsel—from the Detroit-based firm Liddle & Dubin, P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Plaintiffs' counsel has been appointed to represent classes of residents impacted by pollution in dozens of similar cases, and this factor is clearly satisfied here. (**Ex. B**, ¶5).

### 2.    The Costs, Risks, and Delay of Trial and Appeal

The relief achieved in the Settlement Agreement must be considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal. The difficulties of doing so in a case of this nature are difficult to overstate. Odor nuisance class actions are different from many other substantive categories of class action litigation, in that they are not infrequently denied certification depending on the underlying factual circumstances. Beyond certification, liability and damages in such cases entail complex scientific proof and competing observational testimony that makes the ultimate outcome very difficult to predict. Beyond that, appellate courts have been particularly hostile to large jury awards in odor nuisance cases. *See, e.g., Babb v. Lee*

*Cty. Landfill SC, LLC*, 747 S.E.2d 468, 471 (2013) (reducing, via certified question, $2,332,500 jury verdict in *Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318, 320 (D.S.C. 2014) based on limitations on recoverable damages).

Plaintiffs continue to believe that class certification would have been appropriate in this case even absent settlement. But Plaintiffs also recognizes that class certification, particularly in an environmental case, is anything but certain. While class actions have become increasingly difficult to certify in general, some courts have extended that difficulty to environmental class actions in particular. *See Brooks v. Darling Int'l, Inc.*, No. 1:14-cv-01128-DAD-EPG, 2017 U.S. Dist. LEXIS 49660 (E.D. Cal. Mar. 30, 2017); *Hamilton v. 3D Idapro Sols., LLC*, No. 18-cv-54-jdp, 2019 U.S. Dist. LEXIS 128217, at *3 (W.D. Wis. Aug. 1, 2019). Therefore, beyond the "rigorous analysis" standard now employed in Rule 23 class actions, Plaintiffs recognize the significant risk in obtaining class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remains. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, at *5 (W.D. Ky. Aug. 2, 2013) (decertifying class).

Even if Plaintiffs were able to obtain class certification, they would have to affirmatively establish the spread of Defendant's emissions and that those emissions were of such frequency, intensity, and duration to constitute a nuisance. Defendant would likely point to several other area facilities as possible sources of the odors that the Class would testify to and challenge every aspect of Plaintiffs' proof of Defendant's emissions. This would likely involve competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain. Further, Defendant would be likely to vigorously oppose Plaintiffs' evidence on damages. Determining the damages attributable to a nuisance requires that those damages be isolated from

numerous other factors that impact value. One can be sure that Defendant would have offered evidence of countless other factors, real or hypothetical, claiming that much or all of any loss in value claimed to be attributable to Defendant's facility was actually caused by those other factors. After considering the range of possibilities, it is Plaintiffs' counsel's experienced opinion that given the potential risks, rewards and costs of continuing litigation, that settlement on the proposed terms is the most desirable course for Plaintiffs and the Class to take. Those risks further counsel in favor of approving the Settlement Agreement.

Proposed Class Counsel has extensive experience with this type of case and is well-qualified to evaluate the risks of continued litigation. (**Ex. B**, ¶3). The firm of Liddle & Dubin has litigated and resolved dozens of similar noxious industrial air pollution class actions, and the settlement amount is very similar to many other cases of this type, with similar challenges. A few recent examples of similar resolutions reached by Plaintiffs' counsel at Liddle & Dubin include: *Hamilton v. 3D Idapro Solutions, LLC*, United States District Court Western District of Wisconsin Case No. 18-cv-54-jdp (final approval of $725,000 settlement); *Keech and Newfield v. Sanimax USA, LLC*, United States District Court District of Minnesota Case No. 18-cv-683 (final approval of $750,000 settlement); *Alley v. Western Sugar Cooperative*, District Court, County of Morgan Case No. 2017-cv-30078 (final approval of $950,000 settlement); *Plass, et al v. Sanimax USA, LLC*, Brown County Wisconsin Circuit Court Case No. 2015-cv-000165 (final approval of $915,000 settlement). Although many of the above referenced cases also required the defendant to commit to install equipment intended to reduce noxious emissions, those settlements also granted the defendant a cooling-off period of up to 3 years. During that time frame, the neighbors would be precluded from initiating additional litigation. Here, the Defendant has already undertaken some significant steps to reduce any noxious emissions, which appear to have worked.

9

Still, there is no cooling-off period[5] contained in this settlement. Accordingly, this Settlement involving a $800,000 common fund compares favorably to similar industrial air pollution class actions that have recently been approved by other courts spanning numerous jurisdictions.

   **3.**   **The Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims**

This Court has recognized that settlement of class action cases like this "requires an amalgam of delicate balancing, gross approximations and rough justice.'" *Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d. 402, 414 (E.D. Pa. May 7, 2010). "[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 496 (S.D. NY 2018) (*quoting In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (per curiam)). "Accordingly, 'a plan of allocation need not be perfect.'" *Id.* (*quoting Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 U.S. Dist. LEXIS 126934 at *12 (S.D.N.Y. Sept. 22, 2015)). "Rather, '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Id.* (citation and quotation omitted). Ultimately, "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018).

Here, the equal share distribution of the settlement fund to the households of class members makes sense because the potential degree in variation between the claims of Class members is outweighed by the cost, uncertainty, and administrative infeasibility of attempting to distinguish

---

[5] Should the odors return, the settlement does not preclude future litigation.

amongst claims. Identifying, with particularity, the extent to which the usable value of any particular property varies from another would require a combination of emissions modeling and specialized property appraisal that would be sufficiently costly to reduce the Class' aggregate recovery beyond its limited benefit to any particular Class member. Equal distribution avoids these costs as well as the inevitable disputes that Class members would have with any distinctions made pursuant to an effort to treat them differently than their neighbors.

The claims process is as simple as it can be without inviting fraud. There is no reliable way to know who actually occupies a home without soliciting information in the form of a claim form. In administering the settlement, counsel cannot simply mail nameless checks to addresses and hope that they get into the right hands. Instead, the simple claims process, which requires basic proof of identity and qualification, ensures that funds are distributed to qualifying Class members and no one else. It also ensures that the calculations are fair and comprehensive, such that the settlement funds are fully distributed. Both the method for making claims and the method for distributing funds are designed to be maximally effective for getting the Class relief into Class members' hands.

### 4. The Terms of the Proposed Award of Attorney's Fees

Plaintiffs' Counsel will move the Court for fees and costs to be paid from the Common Fund at the Final Fairness Hearing. Under the Settlement Agreement, the total amount to be paid to class counsel shall not exceed one-third of the Gross Settlement Proceeds and the Settlement is not contingent on any amount being awarded to Class Counsel. The costs of notice and administration have not yet been borne, but at present Plaintiffs' counsel has, to date, advanced approximately $9,000 in costs and expenses and anticipate costs of approximately $10,000 in administering this Settlement.

11

The Settlement should therefore be granted preliminary approval so that notice may be sent to the Class and a Final Fairness Hearing scheduled, where the Court will be able to evaluate the reaction of the Class to the proposed settlement and the attorneys' fees requested.

### 5. The Proposal was negotiated at arms-length.

Here, the proposed Settlement represents an arms-length compromise that is the result of extensive pre-suit investigation, informal discovery between the parties, and a full day of mediation with a qualified and experienced neutral, the Honorable Diane M. Welsh (ret.). (**Ex. B**, ¶6). At mediation, a frank discussion was held between the parties regarding the substantive costs and benefits presented to each side. Both sides carefully evaluated the value of this case and were able to agree that the benefits of early resolution greatly outweighed the risks and costs of prolonged litigation. In view of the circumstances surrounding this case, the Settlement achieves an excellent result for the Class, which compares very favorably to other similar settlements. (**Ex. B**, ¶8). While it does represent a compromise, the Settlement addresses the principal concerns of Plaintiffs and their fellow Class Members.

While formal discovery had not yet commenced, this outstanding result was reached in an efficient and effective manner by experienced counsel who conducted a diligent pre-suit investigation of the claims. (**Ex. B**, ¶7). Class Counsel's experience and pre-suit investigation allowed this settlement to be reached without wasting unnecessary time and resources, which is an outstanding result for Plaintiffs and the Class considering that class discovery and certification is typically measured in years—during which no benefits would inure to the Class.

### B. The Court is Likely to Certify the Class for Settlement Purposes.

Though Defendant consents to class certification for settlement purposes only, Plaintiffs must make a general showing that appear to satisfy the four elements of Rule 23(a) and at least

one requirement of Rule 23(b). A proposed class settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(a), which requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011).

On a motion for preliminary approval, which is not final, courts generally apply a more lenient standard for evaluating the elements of class certification and will preliminarily and conditionally certify the class when "the proposed Rule 23 Class appears to meet the requirements for certification under Federal Rule of Civil Procedure 23[.]" *See Curiale v. Lenox Group, Inc.*, 2008 U.S. Dist. LEXIS 92851, *31-32, 2008 WL 4899474 (Nov. 14, 2008). For the following reasons, the Court should preliminarily and conditionally certify the Class for settlement purposes here.

### 1. The Settlement Class is Ascertainable

In addition to the prerequisites of Rule 23 is the preliminary requirement that the Class be ascertainable. *See In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, *PNC Bank NA*, 2015 U.S. App. LEXIS 13186 at *22 (3d Cir. 2010). "[A]scertainability entails two important elements. First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citation omitted).

13

The proposed Class here is readily ascertainable. The Class is defined with reference to objective criteria in the form of ownership and residency within a limited geographic area of one and three-quarters of a mile radius from the property boundary of the Facility located at 2050 Pope Road, Allentown, Pennsylvania. *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 169 (3d Cir. 2015) (abuse of discretion to find that class of "household members" was not ascertainable.) The claims at issue arise from damage to real property, the locations of which are part of the very definition of the Class.  In order to determine whether a given person is a member of the Class, all that is required is to determine whether that person's home is located within the Class Area boundary and/or whether they are an owner/occupant or renter of real property in that Class Area. (*See* **Ex. 2**).  The addresses in the Class Area have already been obtained, and all Class Members will receive notice at their residence by first class mail and by publication notice.  (**Ex. 4; Ex. 5**). Further, each Settlement Class Member will be required to affirm that they reside within the Class Area by checking a box stating that "I now reside or previously resided at a property within the Settlement Class Area." (**Ex. 6**).  Thus, the class is ascertainable, and the proposed settlement administration process will ensure that only proper class members receive compensation.

### 2.     The Settlement Class Satisfies the Numerosity Requirement

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). The threshold for numerosity is approximately 40 class members. *See Gates*, 265 F.R.D. at 215. "The numerosity prerequisite requires a plaintiff to show by a preponderance of the evidence that the proposed class is so numerous that joinder of all absent class members would be impracticable. This analysis largely depends on the circumstances surrounding the case and not merely on the number of class members. While there is no precise

14

number required to satisfy the numerosity requirement, the Third Circuit has made the following

observations:

> [w]hile there are exceptions, numbers under twenty-one have generally been held
> to be too few. Numbers between twenty-one and forty have evoked mixed
> responses and again, while there are exceptions, numbers in excess of forty,
> particularly those exceeding one hundred or one thousand have sustained the
> requirement."

*King Drug Co. of Florence v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 97319, *21 (E.D. Pa. July

27, 2015) (citations and internal quotations emitted).

Here, numerosity cannot be seriously disputed. The proposed Class includes all

owner/occupants and renters of the homes within the Class Area, a residential area within 1.75

miles of Defendant's Facility. The Complaint alleges, based on a verified mailing list obtained by

Class Counsel, that there are more than 2,000 residential addresses within the Class Area. Bringing

every one of the thousands of proposed Class Members before the Court is clearly impracticable,

and it could hardly be disputed that the numerosity element is easily satisfied.

### 3.    The Settlement Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires a party seeking class certification to prove that the class has

common questions of law or fact. Their claims must depend upon a common contention of such a

nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). The Third Circuit has stated that to

meet this standard:

> The bar is not high; [the Third Circuit has] acknowledged commonality to be
> present even when not all members of the plaintiff class suffered an actual injury
> when class members did not have identical claims, and, most dramatically, when
> some members' claims were arguably not even viable. In reaching those
> conclusions, we explained that the focus of the commonality inquiry is not on the

15

strength of each class member's claims but instead on whether the defendant's conduct was common as to all of the class members.

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 397 (3d. Cir. 2015) (quotations and citations omitted).

Here, the claims of Plaintiffs and the absent Class Members entail myriad common questions of fact and law. Plaintiffs' allegations revolve around the common alleged conduct of Defendant in failing to control its emissions from the Facility. The allegations make clear that the noxious odors are allegedly emitted from a single facility operated by the Defendant, which similarly invaded private residential properties throughout the Class Area. Thus, the emissions at issue derive from a common source, are of the same nature, and generally impacted the community as a whole in the same fashion. Accordingly, there are overwhelmingly common factual inquiries relevant to the generation, control, and dispersion of these emissions, each of which would be resolved with a "single stroke." *See Dukes*, 131 S. Ct. at 2545. The commonality requirement is thereby satisfied.

### 4.     The Settlement Class Satisfies the Typicality Requirement

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 207-208 (E.D. Pa. 2015) (citation and internal quotations omitted). To establish typicality, it is sufficient that a plaintiff's claim "arises from the same event, practice or course of conduct that gives rise to the claims of the class members." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Therefore, "factual differences will not render that claim atypical if it is based on the same legal theory as the claims

16

of the class." *Id.*

Plaintiffs' claims, and those of the absent Class Members, entail the same type of alleged damages for the same type of injury caused by the same alleged singular course of conduct by Defendant. Plaintiffs suffered the same type of damages as the rest of the Settlement Class, and their claims of nuisance and negligence are of the same type. There are no conflicts of interest between or among class members, and there is no basis for holding that the typicality element is not satisfied in this common source industrial air pollution case. Further, the Settlement Agreement does not release any claims for personal injury or future odor incidents. Accordingly, there is nothing in the Settlement Agreement that would prevent individuals with claims of a different type than those alleged here from exercising their rights in a future proceeding. In all of the ways that are relevant to the proper analysis, Plaintiffs' claims are the same as the claims of the proposed Class.

### 5.     The Settlement Class Satisfies the Representation Requirement

"The adequacy requirement primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Virginia*, 795 F.3d at 392. Class counsel must be "qualified, experienced, and generally able to conduct the proposed litigation" and "the plaintiff must not have interests antagonistic to those of the class." *King Drug Co.*, 2015 U.S. Dist. LEXIS 97319 at *36-37 (citing *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975)).

Plaintiff's counsel is indeed "qualified, experienced, and generally able to conduct" litigation of this sort. *See Id.* As one federal court noted:

> Class Counsel—from the Detroit-based firm Liddle & Dubin, P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims

17

> ... Absent the skill and efficiency of Class Counsel, it is also unlikely that
> individual Class Members could have obtained any recovery on their nuisance
> claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa.

May 11, 2016). Plaintiffs' counsel has been appointed to represent classes of residents impacted

by pollution in dozens of similar cases. (**Ex. B**, ¶5).

They conducted a thorough investigation which included a detailed inquiry into reports of

odors from the landfill, public information requests to governmental entities, receiving and

reviewing large volumes of public documents, and submitted an odor survey to thousands of area

residents. Counsel negotiated a favorable Settlement Agreement, including through the use of a

neutral mediator.

Plaintiffs are area residents complaining of the same odor problem that has affected their

neighbors. They have demonstrated no conflict of interest with the absent Class Members and have

retained counsel with significant experience in conducting environmental class action litigation.

Plaintiffs' counsel has successfully resolved many dozens of similar environmental lawsuits for

property damage, the vast majority of which were brought and resolved as class actions. Plaintiffs'

counsel concentrates its practice on cases of this sort, and, in reaching this favorable resolution,

has devoted the resources necessary to vigorously pursue the claims of Plaintiffs and the Class and

demonstrated the experience and skill necessary to achieve an outstanding result without wasting

unnecessary time and resources. (**Ex. B**, ¶7).

### 6.    Rule 23(b) is Also Satisfied

"Rule 23(b)(3) focuses on the relationship between the common and individual issues.

When common issues present a significant aspect of the case and they can be resolved for all

members of the Class in a single adjudication, there is a clear justification for handling the dispute

on a representative rather than on an individual basis." *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.* 244 F.3d 1152, 1162 (9th Cir. 2001), *cert denied*, 534 U.S. 973 (2001). Here, the claims and legal theories of each Class Member are identical. The relief sought and obtained for every Class Member is the same. This Class-wide resolution provides the only means of providing redress for every member of the Class and does so without the delay of further (possibly individual) litigation.

### 7.    The Settlement Class Satisfies the Predominance Requirement.

The requirement that questions common to the Class predominate over those affecting only individual members "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Cmty. Bank of N. Va.*, 795 F.3d at 399 (citation and internal quotations omitted). "Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property." *Stanley v. U.S. Steel Co.*, 2006 U.S. Dist. LEXIS 16582, *21, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006). The existence of individual issues does not mean that common issues do not predominate. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). "If issues common to the class overwhelm individual issues, predominance should be satisfied." *Id.* (citation and quotation omitted). "When conducting a predominance inquiry, the court must consider the elements of the underlying cause of action.*" King Drug Co.,* 2015 U.S. Dist. LEXIS 97319 at *40-41.

The common issues relating to Defendant's conduct, the dispersion of Defendant's alleged emissions, and the impacts to the community far outweigh any individual issues. There is substantial evidence that the Class Area has been impacted to a similar degree, rendering individual issues of minimal importance—particularly in light of this Settlement Agreement, which provides for a distribution of funds on a common and equitable basis to all residents who properly submit a

19

claim form. Plaintiffs submit that there are simply no individual issues left in this Settlement Class that might overwhelm the predominating common issues.

### 8. The Settlement Class Satisfies the Superiority Requirement.

"The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Va.*, 795 F.3d at 409 (citation and internal quotations omitted). The list of factors included in Rule 23(b)(3) is non- exhaustive. *Id.* "In establishing superiority, a plaintiff must demonstrate that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.'" *King Drug Co.*, 2015 U.S. Dist. LEXIS 97319 at *58 (citation and internal quotations omitted).

The expenses required to litigate this sort of case render it nearly impossible for single residents to bring their own claims in separate lawsuits. Some putative Class Members' claims would never be brought if they were required to be brought individually. Still, the denial of class certification would ensure that at least hundreds, or more likely thousands, of individual claims would be joined together in one or more massive actions. It would trigger a domino effect of newly-filed lawsuits that would only continue to grow larger as word spread around the area. In cases involving allegations of air pollution, "having hundreds of property owners file the same action against the same defendants for the same types of injury is a clear waste of judicial resources." *Ponca Tribe of Indians v. Cont'l Carbon Co.*, 2007 U.S. Dist. LEXIS 577, *25, 2007 WL 28243 (W.D. Okla. Jan. 3, 2007).

Class resolution achieves economies of time, effort and expense while ensuring uniformity of decision. The alternative to resolving this case as a class action is to bring hundreds or thousands

of individual claims in a constantly expanding stream of litigation while excluding the claims of Class Members for whom active participation is not feasible for financial or other reasons. Resolving these claims together on behalf of a certified Class is fairer and incalculably more efficient. Class resolution will also prevent wasting the resources of the Court and the parties. It will provide a single, orderly resolution to the case with a consistent result. There is no reason to engage in a form of litigation that is filled with pitfalls and drawbacks where class settlement provides redress to thousands at once.

### C.      The Proposed Notice is the Best Notice Practicable Under the Circumstances

In notifying members of the Class, a plaintiff is required to use the "best notice practicable under the circumstances." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Where the addresses of Class Members can be identified through a reasonable effort, direct notice is required. *Id.* at 175. Because Plaintiffs' plan is to mail notice directly to the addresses in the Class Area, provide publication notice in a paper of general circulation throughout the Class Area and on Plaintiffs' Counsel's website, the proposed class notice procedures constitute the best notice practicable under the circumstances. (**Ex. B**, ¶10); *See Fleisher v. Fiber Composites, LLC*, 2014 U.S. Dist. LEXIS 29151, *26 (E.D. Pa. March 5, 2014) (finding that direct mail notice, publication notice, and website publication notice is "best notice practicable under the circumstances."). Accordingly, the Court should approve the proposed class notice plan provided through the Settlement Agreement, Sec. III(4) because it satisfies due process requirements.

### CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their Unopposed Motion and enter the [Proposed] Order of Preliminary Approval of Class Action Settlement, which is attached hereto as **Exhibit C**.

Respectfully submitted,

Dated: March 17, 2021                    LIDDLE & DUBIN, P.C.

/s/Steven D. Liddle
Steven D. Liddle *(Pro Hac Vice)*
Nicholas A. Coulson *(Pro Hac Vice)*
Matthew Z. Robb *(Pro Hac Vice)*
975 E. Jefferson Avenue
Detroit, Michigan  48207
(313) 392-0025

KAMENSKY COHEN & RIECHELSON
KEVIN S. RIECHELSON
Kamensky, Cohen & Riechelson
194 S. Broad St.
Trenton, NJ 08608
(609) 394-8585
*Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I hereby certify that on March __, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 17, 2021

By: _/s/ Steven D. Liddle_