# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK and LORI FUEHRER,   :
on behalf of themselves and all  :
others similarly situated,    :
            :
    Plaintiffs,   :  Case No. 5:20-cv-03910
            :  The Honorable Edward G. Smith
   v.        :
            :
NESTLÉ PURINA PETCARE  :
COMPANY,        :
            :
            :
    Defendant.  :

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, SERVICE AWARD, ATTORNEYS' FEES, AND LITIGATION EXPENSES

Kevin S. Riechelson
Attorney I.D. 58960
**KAMENSKY COHEN & RIECHELSON**
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb*
*Admitted Pro Hac Vice*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
lsheets@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiffs and the putative Class*

# TABLE OF CONTENTS

page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

EXHIBIT LIST ........................................................................................................................ vii

I.    INTRODUCTION ............................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................................3

      A.  Description of Plaintiffs' Claims .............................................................................3

      B.  Summary of the Litigation .......................................................................................4

      C.  Terms of the Proposed Settlement ...........................................................................5

      D.  The Notice Plan, which Is the Best Notice Practicable under the Circumstances, Has Been Effectively Implemented, and the Reaction of the Class Has Been Overwhelmingly Positive .........................................................................................7

      E.  Class Counsel's Work, Skill, and Efficiency on Behalf of the Class ......................8

DISCUSSION .............................................................................................................................9

III.  The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate ...9

      A.  The Proposed Settlement Is Entitled to a Presumption of Fairness and Satisfies the Nine-Prong *Girsh* Factors that Are Used to Evaluate Whether a Settlement is Fair, Reasonable, and Adequate under the Circumstances .............................................11

          1.  Complexity, Expense and Likely Duration of the Litigation ........................13

          2.  Reaction of the Class to the Settlement .......................................................14

          3.  Stage of the Proceedings and the Amount of Discovery Completed .............19

          4.  Risks of Establishing Liability and Damages ...............................................21

          5.  Risks of Maintaining the Class Action through Trial ...................................22

          6.  Ability of the Defendant to Withstand a Greater Judgement ........................24

          7.  Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation ....................................24

IV.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AMOUNTING TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE ...............................25

    A.   The Size of the Fund Created and the Number of Persons Benefitted ...............28

    B.   The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel ...............................29

    C.   The Skill and Efficiency of the Attorneys Involved ...............................29

    D.   The Complexity and Duration of the Litigation ...............................30

    E.   The Risk of Nonpayment ...............................31

    F.   The Amount of Time Devoted to the Case by Plaintiffs' Counsel ...............31

    G.   The Awards in Similar Cases ...............................32

    H.   The Value of Benefits Accruing to Class Members Attributable to the Efforts of Class Counsel as Opposed to the Efforts of Other Groups, such as Governmental Agencies Conducting Investigations ...............................32

    I.   The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel Was Retained ...............................33

    J.   Innovative Terms of Settlement ...............................34

    K.   Lodestar Cross-Check ...............................34

V.   REIMBURSEMENT OF CLASS COUNSEL'S EXPENSES IS WARRANTED ...............35

VI.   THE REQUESTED $1,000 SERVICE AWARD FOR THE PLAINTIFFS/CLASS REPRESENTATIVES IS REASONABLE ...............................36

VII.   CONCLUSION ...............................37

**TABLE OF AUTHORITIES**

page(s)

**Cases**

*Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078
(Col., Morgan Cnty. Dist. Ct.) ..........................................................................13, 25, 32

*Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318 (D.S.C. 2014) ............................................14

*Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468 (2013) ........................................................14

*Batties v. Waste Mgmt. of Pa., Inc.*, 2016 U.S. Dist. LEXIS 186335
(E.D. Pa. May 11, 2016) ..............................................................................................14

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ..............................................................................26

*Brooks v. Darling Int'l, Inc.*, 2017 U.S. Dist. LEXIS 49660 (E.D. Cal. March 30, 2017) ...............

*Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (WD. Ky. 2008) ................................23

*Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201 (E.D. Pa. 2011) ..........................................14

*Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept 2, 2008) ....24

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ..........................................29

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ......................................................10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................................29

*Esslinger*, 2012 U.S. Dist. LEXIS 165773, 2012 WL 5866074 ..................................................34

*Fleisher*, 2014 WL 866441 ..........................................................................................................35

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)..................................................................... *passim*

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ........................................27, 34

*Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) ............12, 23, 25, 32

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................28

*In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, Fed. Sec. L. Rep. (CCH) P91,322 (E.D.
Pa. Jan 4, 2001) ..........................................................................................................10

*In re American Family Enterprises*, 256 B.R. 377 (D.N.J. 2000) ..............................................11

*In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) ...................................................11, 35

*In re CareSciences, Inc. Sec. Litig.*, Civ. A. No. 01-5266 (E.D. Pa. Oct. 29, 2004) ...................27

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ...................................................13, 34

*In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 2014 U.S. Dist. LEXIS 36532 (E.D. Pa. 2014) ........................................................................................... *passim*

*In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003) ...........................................27

*In re Datatec Sys., Inc. Secs. Litig.*, No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .......................................................................................................36

*In re Diet Drugs Prods. Liability Litig.*, 582 F.3d 524 (3d Cir. 2009) .......................................26

*In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................... *passim*

*In re G.M. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 3d Cir. 1995................................................................................................. *passim*

*In re Hemispherx Biopharma, Inc., Sec. Litig.,* No. 09-cv-5262, Dkt. No. 81, 2011 U.S. Dist. LEXIS 172214 (E.D. Pa. Feb. 14, 2011) .......................................................................10, 33, 34

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94 (E.D. Pa. 2002) ........21, 22, 27, 35

*In re Imprelis Herbicide Marketing Sales Practice & Prods. Liability Litig.*, 296 F.R.D. 351 (E.D. Pa. 2013) .......................................................................................................37

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ...........................................................................................29

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ...........................................................................................30, 33

*In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158 (E.D.Pa.1997) ......................11

*In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, Fed. Sec. L. Rep. (CCH) P93, 229 (E.D. Pa. April 18, 2005) ...............................................................................27, 28

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) .......................................................................................................28

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...........................................26, 27, 35

*In re Safety Components, Inc. Securities Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) ....................36

*In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, 2012 WL 1964451 (D.N.J. May 31, 2012) ......................................................................................................................................31

*In re SmithKline Beckman Corp. Secs. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) ......................37

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ....................................................33, 34

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d. Cir. 2004) ...................................21, 22

*Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) .................13, 25, 32

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283 (3d. Cir. 1998) ................................................................................ *passim*

*Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) ..........................................26

*Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821 (E.D. Pa. Jan. 24, 2011) ...............26

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ......................................31

*Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165
(Wis., Brown Cnty. Cir. Ct.) .........................................................................................13, 25, 32

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010) ..............................36

*Snell v. Allianz Life Ins. Co. of N. Am. & Fidelity Union Life Ins. Co.*, No. 97-cv-2784, 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ..................................................................................28

*Stevens v. SEI Invs. Co.*, 2020 U.S. Dist. LEXIS 35471, 2020 WL 996418
(E.D. Pa. Feb. 28, 2020) .............................................................................................................35

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .........................................................14

*Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549 (E.D. Pa. 2005) ...............................................14

*Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351
(E.D. Pa. 2015) ...........................................................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................23

## **Statutes**

Fed. R. Civ. P. 23(e) ........................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(1) ............................................................................................10

Fed. R. Civ. P. 23(e)(2) ............................................................................10, 11, 17, 33

Fed. R. Civ. P. 23(h) ............................................................................................35

Fed. R. Civ. P. 56............................................................................................18

## **Other Authorities**

3 Herbert Newberg & Albert Conte, Newberg on Class Actions, § 14.03 at 14-5
(3d ed. 1992) ............................................................................................35

5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.161[1] (3d ed. 2006) .......10

## INDEX OF EXHIBITS

**Exhibit 1** – Declaration of Steven D. Liddle

      **Exhibit 1(A) -** Proof of Publication Notice in the Morning Call

      **Exhibit 1(B)** – Settlement Opt Outs

      **Exhibit 1(C)** – Class Counsel Litigation Costs

**Exhibit 2** – [Proposed] Final Order Approving Settlement

## I.     INTRODUCTION

Plaintiffs Mark and Lori Fuehrer brought this action on behalf of themselves and a proposed class of their neighbors against Defendant Nestlé Purina Petcare Company ("Defendant") because of property damages allegedly suffered due to noxious emissions from Defendant's pet food manufacturing facility in Allentown, Pennsylvania. Defendant's noxious odors allegedly invaded the private properties of Plaintiffs and the Class, interfering with the use and enjoyment of private property and depriving local property holders of the full value of their respective properties.

Following an extensive investigation by Plaintiffs' experienced counsel at Liddle & Dubin, P.C., which specializes in complex environmental class actions involving noxious industrial emissions, informal discovery between the parties, and a full-day mediation before a neutral mediator, the parties presented the Court with a proposed Settlement Agreement that would finally resolve Plaintiffs' property damage claims. The proposed Settlement Agreement, including all of its exhibits, was attached to Plaintiffs' Motion for Preliminary Approval. (ECF No. 25-2, pgs. 2-19 of 40). The relevant settlement documents, including the Settlement Agreement, were also published on Class Counsel's website, which was included in the Class Notice that was disseminated to the Class.[1] (**Ex. 1,** Liddle Decl., ¶16)  As a result of this Settlement Agreement, Defendant will create a common fund for the benefit of the Class in the amount of $800,000, which will be distributed on an equal basis from the Net Settlement Proceeds to Class Members who timely submitted a valid claim form. (ECF No. 25-2, pg. 11 of 40, Sec. III, ¶8).

On March 18, 2021, following a hearing, the Court entered an order of preliminary

---

[1]   https://www.ldclassaction.com/class-action/nestle-purina-petcare-co-settlement/   (last visited June 16, 2021).

approval pursuant to Fed. R. Civ. P. 23 stating that: "[t]he Court finds that the Settlement Agreement between the parties … appears, upon preliminary review, to be a Settlement in good faith, fair, adequate, reasonable, and in the best interests of the Settlement Class, and is approved by the Court." (ECF No. 27). The Court preliminarily certified the Class and ordered that notice be mailed to the Class in the form presented to the Court (*See* ECF No. 25-2, pgs. 31-34 of 40) along with a claim form. (*See* ECF No. 25-2, pgs. 38-40). Notice was in fact distributed to the Class via first class mail by Class Counsel in the form approved by the Court, with instructions provided for how Class Members could exercise their rights to file a claim, opt-out, and/or object to the proposed Settlement Agreement. (ECF No. 28, ¶2; **Ex. 1**, ¶14).

Plaintiffs and Class Counsel are pleased to report that the Settlement Agreement has received an overwhelmingly positive response from the Class and hereby move that the Settlement be finally approved as fair, reasonable, and adequate. (*See* ECF No. 28, ¶4). Accordingly, Plaintiffs submit this memorandum of law in support of their unopposed Motion for Final Approval of Class Action Settlement. Plaintiffs request that the Court enter a Final Judgement and Order of Dismissal, substantially in the form attached hereto as **Exhibit 2**, finally (i) approving and certifying the Settlement Class; (ii) designating Plaintiffs Mark and Lori Fuehrer as the Class Representatives of the Settlement Class; (iii) designating Kevin S. Riechelson, Steven D. Liddle, Laura L. Sheets, and Matthew Z. Robb as Class Counsel for the Settlement Class; (iv) ordering that the notice of the proposed Settlement satisfied the requirements of due process and Fed. R. Civ. P. 23(e); (v) determining that the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e); (vi) ordering that all Class Members who elected to opt-out shall not be bound by the Settlement; (vii) overruling the lone objection to the Settlement; (viii) awarding an incentive fee of $1,000 to Plaintiffs Mark and Lori Fuehrer; and (ix) awarding attorneys' fees

to Class Counsel in the amount of $259,886[2] and reimbursement of litigation expenses to Class Counsel in the amount of $19,340.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

### A.        Description of Plaintiffs' Claims

Plaintiffs are residents of the area surrounding Defendant Nestlé Purina Petcare Company's pet food manufacturing facility in Allenton, Pennsylvania (the "Facility"). Plaintiffs' Complaint alleged that Defendant has failed to control the emissions that were generated through its production of pet food products. Plaintiffs further alleged that on frequent and recurring occasions, these odorous emissions entered onto their properties and interfered with their ability to use and enjoy their homes and deprived residents of the value of their properties. Plaintiffs' claims sounded in nuisance and negligence and sought property damages only.[3] Through their initial Motion for Preliminary Approval of Class Action Settlement, Plaintiffs sought to certify a settlement only class consisting of:

> The named Plaintiffs and all persons who, at any time during the Settlement Class Period, either:

---

[2] The Settlement Agreement provided for "attorney fees in an amount not to exceed on-third of the Gross Settlement Proceeds." (ECF No. 25-2, pg. 10 of 40, Sec. III, ¶7). The retainer agreement entered between Plaintiffs and Class Counsel called for counsel to cover all costs and risks of the litigation in exchange for a contingent fee recovery of 35% if settlement prior to trial certification or 40% if settled thereafter or if tried. (**Ex. 1,** ¶23). The request for attorneys' fees in the amount of $259,886 was calculated by subtracting from the Gross Settlement Proceeds ($800,000) the requested $1,000 incentive award and $19,340 costs, which equals $779,660. Then, the amount of $779,660 was divided by 3 to reach the requested fee of $259,886 (rounded down to the nearest dollar). This request comports with the terms of the Settlement Agreement, the terms of the private retainer agreement, the customary contingent fee award for legal representation at no upfront cost to the client, and similar class action attorneys' fees routinely awarded in the Third Circuit.

[3] No claim for any actual or personal injuries or diagnosed medical conditions was raised by Plaintiffs, and no such claims are impacted by the Releases contained in the Settlement. (See ECF 25-2, pg. 15 of 40, ¶15).

(i)     Owned and occupied a residential property within the Settlement Class Area; or

(ii)    Resided within a residential property within the Settlement Class Area.[4]

Notwithstanding the foregoing, the following persons are excluded from the "Settlement Class": (i) officers, directors, and members of the Boards of Defendant; (ii) the presiding judicial officer (Honorable Edward G. Smith) and his staff; and (iii) Class Counsel, counsel for Defendant, and their respective staffs. (ECF No. 25-2, SA, pg. 2, ¶10).

### B.      Summary of the Litigation

Plaintiffs filed the Complaint in this case on August 11, 2020 following an extensive pre-suit investigation by Counsel. (ECF No. 1) The pre-suit investigation included Right to Know Act requests to the City of Allentown, Pennsylvania, the Pennsylvania Department of Environmental Protection, and South Whitehall Township and a comprehensive review of the records thereby obtained.  (**Ex. 1**, ¶6, 13). Plaintiffs' Counsel also obtained and reviewed reports from members of the putative class regarding the alleged conditions that would become the subject of the complaint filed in this Court on August 11, 2020. (*Id.*, ¶6).

The Complaint sought money damages for injuries to property and injunctive relief for the Named Plaintiffs and others similarly situated, asserting claims in three separate counts for public nuisance, private nuisance, and negligence.  (ECF No. 25-2, pg. 4 of 40, ¶1). Despite Defendant's denial of Plaintiffs' claims of wrongdoing, the parties agreed to begin good faith settlement discussions. (ECF No. 25-2, pg. 4 of 40, ¶2-3).  To that end, Counsel for Defendant and Class Counsel voluntarily participated in a full-day mediation with Honorable Diane M. Welsh (ret.),

---

[4] The area enclosed by a geographic boundary consisting of the one and three quarters of a mile radius from the Facility's property boundary was depicted on the map attached to the Settlement Agreement as **Exhibit 2**. (*See* ECF No. 25-2, Pg. 24 of 40).

formerly a Magistrate Judge of this Court. (*Id.* at ¶3). As a result of this mediation, which involved arm's-length negotiations between counsel experienced in these matters with the assistance of an experienced mediator, counsel agreed to settle the claims asserted in the Complaint on the terms and conditions set forth herein, subject to the Court's review and approval. (*Id.*) As a result of the daylong mediation, the parties were able to agree to the essential terms of the settlement that is now presented to the Court, which both parties' experienced counsel agree represent the best interest of the parties under the circumstances, given the time, complexity, and expense this litigation would surely present absent this agreement. (*Id.* at pg. 5 of 40, ¶4-6).

### C.    Terms of The Proposed Settlement

Under the proposed Settlement Agreement[5] (ECF No. 25-2), Defendant will be required to provide monetary relief to the Class for property damages allegedly incurred, in exchange for which the Class will release certain claims against Defendant.  (*Id.*, pg. 14-15 of 40, ¶15-16). Defendant will create a common fund for the benefit of the Class in the amount of $800,000. (*Id.*, pg. 11 of 40, ¶8). The Net Settlement Proceeds[6] shall be distributed on an equal basis to all Class Members who timely submitted a valid claim form to Class Counsel (by June 1, 2021) and did not opt to be excluded. (*Id.*, ¶8-8(a)). The proposed settlement includes a full release and discharge by Plaintiff and each Class Member of any and all claims that were, or could have been, asserted against the Releasors between August 11, 2018 ("Settlement Class Period") and the "Effective

---

[5] Capitalized terms shall have the same meaning here as assigned to them in the Settlement Agreement.

[6] The "Net Settlement Proceeds" is the remaining amount of the $800,000 Gross Settlement Proceeds after disbursement of any court-approved attorneys' fees, litigation and settlement administration expenses, and any incentive fees. (ECF No. 25-2, pg. 11 of 40, ¶8).

Date" of the Settlement.[7] (*Id.*, pg. 4 of 40, ¶ 12; pg. 3 of 40, ¶ 7).  The Release expressly preserves the Class Members' right to bring any claims for personal injuries, diagnosed medical conditions, and/or any claims based on odors or other airborne emissions that occur(ed) after the date of the Final Judgement and Order of Dismissal.  (*Id.*, pg. 15 of 40, ¶ 15).  However, the Release binds all Class Members who fail to opt-out of the settlement from suing Defendant relating to the allegations made in the Action. (*Id.*, pg. 14 ¶ 16).

The Settlement Agreement, and this Court's order for preliminary approval, required Class Counsel to administer the settlement and distribute the approved notice to the residential addresses within the Class Area by mail within fifteen (15) days of preliminary approval.  (*Id.* ¶4(a)); *see also* Class Notice, ECF No. 25-2, pg. 31-34 of 40). The Settlement also required Class Counsel to publish a short form notice (ECF No. 25-2, pg. 36 of 40) in the legal notice section of the Morning Call, a newspaper of general circulation in the Class Area.  (*Id.*, pg. 8 of 40, ¶4(a)(ii)). Class Counsel fulfilled these notice requirements in an effective and timely manner. (**Ex. 1,** ¶14-17).

From the date the longform notice was individually mailed to each residential address within the Class Area, Class Members were provided sixty (60) days to object to or opt out of the Settlement. (ECF No. 25-2, pg. 9 of 40, ¶ 5; *Id.*, pg. 10 of 40, ¶6). Class Members were also given sixty (60) days from the date Notice was mailed to submit a valid timely Proof of Claim to Class Counsel for an equal share from the common fund. (*Id.*, pg. 12 of 40, ¶9). The deadline for submission of claim forms, opt outs, and objections was set by the Court for June 1, 2021. (ECF No. 27, pg. 2 of 4, ¶2(d)-(e)); *Id.* ¶4).

After deduction of any attorneys' fees, litigation and settlement administration costs, and

---

[7] See the Settlement Agreement at page 13-14 ¶15 for specific definitions of the "Releasors" and the "Released Parties."

incentive awards that may be awarded by the Court from the Gross Settlement Proceeds, the Net Settlement Proceeds will be divided equally among all households of Class Members who submitted timely claim forms. (ECF No. 25-2, pg. 111-12 of 40, ¶8(a)-(c)). The Settlement Agreement provides for requests of a Named Plaintiff Incentive Award in an amount not to exceed $1,000 (*Id.*, pg. 10 of 40, ¶7) and permits Class Counsel seek payment of costs and attorneys' fees not to exceed one-third of the Gross Settlement Proceeds.[8] (*Id.*)

> **D.    The Notice Plan, which Is the Best Notice Practicable under the Circumstances, Has Been Effectively Implemented, and the Reaction of the Class Has Been Overwhelmingly Positive.**

Through its preliminary approval order, the Court approved the notice forms and ordered Class Counsel "to give notice of the hearing and proposed settlement to the Class Members in accordance with the terms of the Settlement Agreement." (ECF No. 27, pg. 3-4 of 4). The Settlement Agreement required that notice be provided within 15 days of preliminary approval. Class Counsel timely effectuated the notice in accordance with the Court's preliminary approval order and the terms of the Settlement Agreement. (**Ex. 1**, ¶14). After updating the proposed class notices to comply with the deadlines set by the Court, Class Counsel disseminated the longform notice to each residential address within the Class Area on April 2, 2021. (*Id.*) Class Counsel utilized the services of Wolverine Solutions Group to disseminate the class notice. (*Id.*) The short form notice was also published in The Morning Call, a newspaper of general circulation in and around the Class Area on April 6, 2021. (**Ex. 1(A)**, Proof of Publication Notice in the Morning Call). Thus, the notice plan was effectuated in a timely manner and in accordance with the Court's preliminary approval order and the terms of the Settlement.

The reaction of the Class to the proposed Settlement has been overwhelmingly positive and

---

[8] The Settlement is not contingent on any amount being awarded to Plaintiffs or Class Counsel.

demonstrates that the notice plan was effective. The June 1, 2021 deadlines set by the Court for Class Members to submit claims, opt out, or object to the Settlement have now passed, and the reaction of the Class is clear: the Settlement provides highly beneficial and desired monetary relief, and it should be approved as fair, adequate, and reasonable under the circumstances. (**Ex. 1**, ¶¶9-13). 340 valid and timely claim forms have been received to date, indicating very strong community support for the Settlement.[9] (*Id.*, ¶19). Six Class Members submitted opt-out requests.[10] (*Id.*, ¶20; **Ex. 1(B)**). Only one objection was filed. (**Ex. 1**, ¶21; ECF No. 28-1). The lone objection was submitted via US Mail by Dina and Kory Kennedy ("Objector"). As ordered by the Court, the objection was previously submitted to the Court on June 8, 2021, with Plaintiffs' stated reasons why it should be overruled. (See ECF No. 28, 28-1).

The reaction of the Class indicates extraordinary community support for the Settlement. Of the 347 responses received, less than one percent (0.29%) objected to approval of the Settlement. Only 1.7% of respondents opted to be excluded. Meanwhile 98% of respondents—excluding the Objector who filed a claim form—submitted claim forms with no objection. In addition to the significant and substantive relief provided by the terms of the Settlement itself, the exceptionally positive response of the Class demonstrates that the notice was effective, the Settlement is fair, adequate, and reasonable, the Settlement Agreement should be finally approved, and monetary relief should be distributed to the Class. (**Ex. 1**, ¶¶9-13, 17).

**E.     Class Counsel's Work, Skill, and Efficiency on Behalf of the Class.**

The Firm of Liddle & Dubin, P.C. ("L&D") devotes nearly its entire practice to prosecuting

---

[9] Due to recent delays in U.S. Mail relating to Covid-19 and other factors, it is entirely possible that additional claim forms will be received late but postmarked by the deadline of June 1, 2021.

[10] Technically under the Settlement Agreement, these six opt outs should be counted as five opt outs because two were submitted by members of the same household (Seipel, 1484 Blue Barn Road).

class actions, the majority of which relate to complex environmental class actions like this case. (**Ex. 1**, ¶3-5, 8). The attorneys at L&D have been appointed as class counsel in dozens of cases, spanning many jurisdictions. (*Id.*, ¶5). Indeed, L&D is one of very small number of firms in the entire country that will handle this type of complex environmental class litigation. (*Id.*, ¶3).

L&D attorneys, in association with their local counsel at Kamensky Cohen & Riechelson, endeavored to take on the cause of Plaintiffs, the Class, and the Allentown community without any guarantee of recovery, while fronting all of the costs and taking on all of the risks of the litigation. (**Ex. 1**, ¶9, 11, 22; **Ex. 1(C)**). There are numerous points at which environmental class cases like this can fail and seriously risk a total loss for the law firm. Yet, the attorneys at L&D and their local counsel expended hundreds of attorney hours prosecuting this case and fronted $19,340 for the benefit of the litigation and this Settlement, without any guarantee of recovery. (*Id.*) Further, if the Settlement is finally approved, L&D will bear all the remaining costs of administering and effectuating the Settlement, without any additional reimbursements. (**Ex. 1**, ¶25). For the significant work, skill, and risk that Class Counsel dedicated to the cause of Plaintiffs and the Class, Plaintiffs respectfully request that the Court award attorneys' fees of one-third of the Gross Settlement Amount ($259,886) and litigation and administration expenses in the amount of $19,340. (*Id.*, ¶ 22; **Ex. 1(C)**). Plaintiffs also request that a service award of $1,000 be awarded to the named Plaintiffs, Mark and Lori Fuehrer, for the time and effort they dedicated to the cause of obtaining this settlement for the Class as a whole.

## DISCUSSION

### III.    The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate.

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir.

1975). "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, *15, Fed. Sec. L. Rep. (CCH) P91,322 (E.D. Pa. Jan 4, 2001) (citing *In re G.M. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 3d Cir. 1995) ("*GM Trucks*"). Because a settlement class has already been preliminarily certified, "the Court need not determine whether to certify a settlement class. The court, however, must scrutinize the terms of the settlement to ensure that it is 'fair, adequate, and reasonable.'" *Id.* (citing *GM Trucks* at 785).

As this Court has recognized, Federal Rule 23(e) "requires the district court to (1) 'direct notice in a reasonable manner to all class members who would be bound by the proposal,' and (2) approve the proposal 'only after a hearing and on finding that it is fair, reasonable, and adequate.'" *In re Hemispherx Biopharma, Inc., Sec. Litig.*, No. 09-cv-5262, Dkt. No. 81, 2011 U.S. Dist. LEXIS 172214, *11-12 (E.D. Pa. Feb. 14, 2011) (Order) (quoting Fed. R. Civ. P. 23(e)(1)-(2)).

Strong judicial policy favors resolution of litigation short of trial. *See, e.g.*, *GM Trucks*, 55 F.3d at 784 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings."); 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.161[1] (3d ed. 2006) (noting "there is a strong judicial policy in favor of settlements of class actions. Settlement of class actions conserves judicial resources by avoiding further litigation. The parties to a settlement also

avoid the costs and risks of a lengthy and complex trial.") (footnotes omitted). Ultimately, a settlement is "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GM Trucks*, 55 F.3d at 806.

For the reasons discussed in fact sections above, and for the reasons that follow, the proposed settlement is fair, reasonable, and adequate under the circumstances, and it should be finally approved.

> **A.** **The Proposed Settlement Is Entitled to a Presumption of Fairness and Satisfies the Nine-Prong *Girsh* Factors that Are Used to Evaluate Whether a Settlement is Fair, Reasonable, and Adequate under the Circumstances.**

"The Third Circuit applies a nine prong test, known as the *Girsh* factors, when determining the fairness, adequacy, and reasonableness of a proposed class action settlement [under Fed. R. Civ. P. 23(e)(2)]: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 742 (E.D. Pa. 2013) (quoting *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975) (internal quotation marks and ellipses omitted)). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re American Family Enterprises*, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D.Pa.1997); *see also In re AT&T Corp. Sec. Litig.*, 455

F.3d 160 (3d Cir. 2006).

In conjunction with the *Girsh* analysis, "[t]he Third Circuit applies an initial presumption of fairness where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) (internal quotations, citations, and marks omitted). Here, each of these factors is satisfied, and the Settlement is entitled to a presumption of fairness.

The settlement negotiations occurred at arms' length, as this resolution was reached with the involvement and aid of an experienced neutral mediator Diane M. Welsh (ret.), who was formerly a magistrate of this Court. (**Ex. 1**, ¶7). Further, while formal discovery had not yet commenced, an extensive pre-trial investigation and administrative record permitted Class Counsel to understand the relative strengths, weaknesses, and risks associated with this case. (*Id.*, ¶6).

Additionally, the proponents of this settlement are experienced in similar litigation, as Defendant's counsel and Class Counsel have litigated, and settled, similar litigation in the past. L&D for its part is one of the few, if not only, firms in the country that devotes a large proportion of its practice to environmental air pollution class actions like this, and it is Class Counsel's experienced opinion that this is an outstanding result for the Class based on the facts presented in this case, which involved significant interim facility improvements during the pendency of the litigation. (*Id.*, ¶8-13). Further, the relief obtained through this Settlement compares very favorably to other similar L&D settlements in industrial air pollution class actions. (*Id.*, ¶8-13). A few recent examples of similar resolutions reached by Class Counsel at L&D include: *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement);

*Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct.) (final approval of $950,000 settlement); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement). (*Id.*, ¶10). Each of these cases involved substantial discovery and motion practice prior to mediation. (*Id.*) L&D is highly experienced in litigation of this type, and the $800,000 relief obtained here compares very favorably considering all the attendant circumstances.

Finally, the reaction of the Settlement Class was almost unanimously favorable, as only one objection was filed, compared to 340 valid and timely claim forms. (*Id.*, ¶18-21). Because far less than 1% of respondents objected, the fourth factor weighs heavily in favor of applying the Third Circuit's initial presumption of fairness. For the following reasons, each of the *Girsh* factors weighs strongly in favor of approving the proposed settlement, and no factor provides a sufficient factual or legal basis for overcoming the Third Circuit's initial presumption of fairness, which applies here.

### 1.    Complexity, Expense and Likely Duration of the Litigation

This factor considers "the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001)). Litigating environmental class actions is an inherently costly and time-consuming endeavor. The complicated scientific and technical nature of the proofs inherent in such actions requires the use of sophisticated experts whose fees are substantial. Further, the class certification issues involved in cases like this often take years to resolve, prior to any dispositive motion practice or class proceedings on the merits, and without considering the time required for likely appeals. In prior odor nuisance cases, Class Counsel has advanced more than $200,000 (largely for costs related to scientific expert testimony)

at the class certification stage alone. Such expenses can detract significantly from the Class' ultimate recovery. (**Ex. 1**, ¶9). The specter of appeal introduces even more risk and taking this case to trial would undoubtedly cost in excess of $100,000 and several years, while failing to provide any relief to Plaintiffs or the Class in the interim. (*Id.*)

Beyond certification, liability and damages in such cases entail complex scientific proof and competing observational testimony that make the proceedings unusually expensive, time-consuming, and which render the ultimate outcome very difficult to predict. Beyond that, some appellate courts have been particularly hostile to large jury awards in odor nuisance cases, which renders cases like this highly susceptible to long delays during appeal. *See, e.g.*, *Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 471 (2013) (reducing, via certified question, $2,332,500 jury verdict in *Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318, 320 (D.S.C. 2014) based on limitations on recoverable damages). This factor weighs heavily in favor of approving the Settlement.

### 2.      Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 318 (3d. Cir. 1998) ("*Prudential*"). "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *GM Trucks*, 55 F.3d at 812. "Courts have generally assumed that silence constitutes tacit consent to the agreement." *Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (quoting GM Trucks) (marks omitted). "The dearth of objections or opt-outs suggests that the Class is generally satisfied with the Settlement." *Batties v. Waste Mgmt. of Pa., Inc.*, 2016 U.S. Dist. LEXIS 186335, *22 (E.D. Pa. May 11, 2016) (citing, *inter*

*alia*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990) (stating that settlement "strongly favor[ed]" where, "out of 281 class members, only twenty-nine, filed objections to the proposed settlement"); *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) ("Over 16% of 11,980 class members notified have submitted claim forms seeking to participate in the settlement. Only 18 members have chosen to opt out and only five have filed what could be considered objections . . .  This relatively high response rate indicates a more than favorable class reaction.").

Here, the reaction of the Class overwhelmingly supports final approval of the Settlement. 340 valid and timely claim forms were received to date, indicating very strong community support for the Settlement. (**Ex. 1**, ¶19). Six Class Members submitted opt-out requests, and only one objection was filed. (Id., ¶20-21; **Ex. 1(B)**; ECF No. 28-1). Of the 347 responses received, less than one percent (0.29%) objected to approval of the Settlement. Only 1.7% of respondents (6) opted to be excluded. Meanwhile 98% of respondents (340)—excluding the Objector—submitted claim forms with no objection. This an exceptionally favorable response to the Settlement by the Class that weighs overwhelmingly in favor of approval.

The lone objection was submitted via US Mail by Dina and Kory Kennedy ("Objector"). [ECF No. 28-1]. While Plaintiffs are highly sympathetic to resident concerns like the one expressed by the Kennedy's, and have advocated for their cause through this litigation, the lone objection should be overruled. The primary reason that the objection should be overruled is that it premised primarily upon misunderstandings regarding the underlying facts of the litigation and the effect of the settlement on the Objector's rights.

Class Counsel vigorously advocated for improvement measures to the Nestle facility through this litigation. However, Defendant had already invested significant resources into facility

improvements designed to mitigate odor emissions after this case was filed, and there is good reason to believe that the facility improvements have significantly helped mitigate the alleged odor problem. (**Ex. 1**, ¶12-13). These long-term facility improvements included upgrades to the wastewater treatment facility, the November 2019 installation of a "Purafil unit" and the installation of "four Uniqair ionization units" that were installed in 2018. [ECF No. 28-1, pg. 2, 6, and 7 of 11]. These "long-term odor mitigation project[s]" were noted by Defendant's Factory Manager in his response to Objectors' complaint on July 24, 2019 and again in response to Defendants' January 27, 2020 response to Objectors' complaint. [ECF No. 28-1, pg. 6 of 11; pg. 7 of 11]. The alleged odor events involved related to apparent mechanical malfunctions, as "two of [Defendant's] four odor mitigation units are not functioning as they should." [ECF No. 28-1, pg. 7 of 11]. The company noted that the improvements require "some time and adjustments before the system would be considered fully operational." [*Id.*].

Only two of the Objectors' complaints to Defendant were logged after the aforementioned facility improvement measures were installed, and it is apparent from Defendant's response that the odor issues were related to the ongoing process of installing and implementing those projects. Thus, the factual record does not support that there is a significant and ongoing odor emission problem that would likely rise to the level of a nuisance and require additional improvement measures to finally approve the Settlement as fair, reasonable, and adequate.

However, to confirm whether Defendant's odor problem remained ongoing after the improvement measures were installed and implemented, Plaintiffs submitted a freedom of information request to the Pennsylvania Department of Environmental Protection (PA DEP) seeking all odor-related complaints, letters of violation, and notices of violation from September 1, 2019 to the present (September 4, 2020). (**Ex. 1**, ¶13). In response, Class Counsel received no

16

notices of violation from the PA DEP and very few resident complaints, which were investigated by PA DEP with no violation issued to Defendant. (*Id.*). The utter lack of new regulatory violations, in addition to a significant decline in resident complaints since Defendant's installation of numerous odor mitigation improvements at the Facility, indicates that the long-term fixes that Objectors seek are already being implemented and are having a positive impact on odor emissions and the quality of life in the Class Area. These facts weigh heavily against requiring additional facility improvement measures in order to approve the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). (*Id.*).

Further, the objection misconstrues the effect of the Settlement on Class Member rights moving forward. The Objector claims that the settlement does not "permanently address the issue at hand[.]" [ECF No. 28-1, pg. 1]. However, this case was, and always has been, primarily about seeking an adequate remedy for the property damages caused by Defendant's emissions. The $800,000 settlement fund adequately achieves compensation for property damages already incurred, and the Objector fails to challenge the adequacy of the monetary compensation. Indeed, "[t]he primary touchstone of this inquiry is the economic valuation of the proposed settlement." *GM Trucks*, 55 F.3d at 806. The settlement achieves that result and not a single member of the Class claims that the significant $800,000 relief is somehow inadequate compensation for the property damages suffered.

Most significantly, however, if the Objector is correct regarding "the ongoing and continuing presence of the putrid cooking odors that are permeating the air in our home and around our neighborhood" then Objector and any other Class Member maintains any right they previously held to file a lawsuit in the future seeking compensation for such future harms to person or property. Class Counsel has adequately represented and protected the Class' right to do so. The

Settlement expressly provides that "the Releasors do not release any claims based on odors or other airborne emissions after the date of the Final Judgement and Order of Dismissal." [ECF No. 25-2, pg. 15 of 40, ¶15]. Thus, the lack of formal improvement measures in the Settlement cannot be determined to be unfair or inadequate because future legal rights to seek property damages relating to Defendant's future emissions are preserved.

The same can be said for Objectors' concern regarding "unforeseen health issues associated with this pollution." [ECF No. 28-1, pg. 1]. The Settlement Agreement also expressly provides that "Releasors do not release any claims for personal injuries or for diagnosed medical conditions (other than Contemporaneous Physical Reactions)[.]" [ECF No. 25-2, pg. 15 of 40, ¶15]. Thus, the Settlement adequately protects the Class' rights to seek legal remedy for any personal injuries that they may associate with Defendant's emissions. The Settlement is fair, reasonable, and adequate.[11]

Viewed in contrast to the hundreds of neighbors who have either taken no action or filed claims for compensation from the Settlement Fund, the single objection does not outweigh the overwhelmingly supportive of the Settlement and the benefits it provides. In addition to the significant $800,000 in monetary relief provided by the terms of the Settlement itself, the exceptionally positive response of the Class demonstrates that the notice was effective, the

---

[11] It is also noteworthy that Objectors understandably do not appear to weigh the risks or the complex factual and legal issues that would be involved with prolonged class litigation. Any number of legal and factual scenarios in this case could result in a $0 recovery and no injunctive relief. Prosecuting environmental class actions is an inherently risk and cost intensive proposition that would likely require years and many tens of thousands of dollars of additional investments to litigate through class certification and trial. The results of a class certification determination, merits discovery, motion practice under Fed. R. Civ. P. 56, *Daubert* challenges, pre-trial motion practice, and trial on the merits would be anything but certain and threaten a zero recovery for Objectors, Plaintiffs, and the Class. A mutual resolution like this, which provides substantial monetary compensation to the Class and avoids the inherent costs and risks of prolonged litigation, is fair, adequate, and reasonable and should not be threatened merely because the improvement measures taken by Defendant failed to satisfy every single member of the community.

Settlement is fair, reasonable, and adequate. The Settlement Agreement should be finally approved, and monetary relief should be distributed to the Class.

### 3. Stage of the Proceedings and the Amount of Discovery Completed

In order to satisfy the third *Girsh* factor, "[t]he parties must have an 'adequate appreciation of the merits of the case before negotiating.' To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken." *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 319 (3d. Cir. 1998) (quoting G.M. Trucks, 55 F.3d at 813). Prior to initiation of this litigation, Class Counsel developed an adequate appreciation of the merits of the case before filing through an extensive investigation into odor emissions from Defendant's facility that included numerous Right to Know requests from administrative and governmental agencies including the City of Allentown, the Pennsylvania DEP, and South Whitehall Township. (**Ex. 1**, ¶6). These freedom of information requests yielded voluminous documents regarding Defendant's facility, including odor complaints, inspection reports, odor investigation reports, odor patrol surveys, and internal emails that Class Counsel reviewed prior to filing suit. (*Id.*) Class Counsel also received and reviewed dozens of Data Sheets submitted to Counsel by residents of Defendant's facility reporting odor emissions from the Facility. (*Id.*) Class Counsel's analysis of the public records and the Data Sheets sufficiently informed Counsel of the salient strengths and weaknesses of the case prior to mediation.

Further, Class Counsel at L&D devote nearly all of its practice to prosecuting class actions, the majority of which relate to environmental class actions. (**Ex. 1**, ¶3). Cases involving allegations of air pollution or noxious odors in which L&D has been appointed by courts to represent certified plaintiff classes include, without limitation:

*Clark-Floyd Landfill, LLC v. Gonzalez*, No. 19A-CT-2680, 2020 Ind. App. LEXIS
257 (Ct. App. June 18, 2020) (certification affirmed on appeal); *Ross, et al. v. USX
Company*, Case No. G.D. 17-008663 (Allegheny Cty., PA Ct. of Common Pleas);
*Bright et al v. Wake County Disposal, LLC*, Case No. 18-cvs-10976 (Wake Cty.
NC Superior Ct.); *Michaely v. Browning-Ferris Industries of California, Inc.*
(California Superior- Los Angeles Case No. BC497125 2019); *Batties v. Waste
Management of Pennsylvania, LLC,* No. 14-7013, 2016 U.S. Dist. LEXIS 186335,
at *47 (E.D. Pa. May 11, 2016); *Beck v. Stony Hollow Landfill, Inc.,* No. 3:16-cv-
455, 2018 U.S. Dist. LEXIS 199221, (S.D. Ohio Nov. 26, 2018); *Johnston, et al. v.
Deffenbaugh Disposal, Inc*., Case No: 2:16-cv-02648JTM-KGG (D. Kan.); *Brown
v. Rhode Island Resource Recovery Corporation*, C.A. NO. PC 2015-0947 (Rhode
Island Superior 2018); *McCarty v. Okla. City Landfill, LLC,* No. CIV-12-1152-C
(W.D. Okla. April 11, 2016); *Ng. v. International Disposal Corp. of California*,
Case No. 112CV228591 (Santa Clara CA Superior Court Aug. 1, 2016); *Connors
v. AmeriTies West, LLC,* (Wasco County Oregon Case No. 16-CV-25390, 2018);
*Gingrasso, et al. v. Cedar Grove Composting Facility, Inc*., (King County (WA)
Superior Court Case No: 13-2-05334-9 KNT, 2018); *Bundy, et al. v. Cedar Grove
Composting Facility, Inc.,* Snohomish County (WA) Superior Court Case No: 13-
2-02778-8, 2018) (thousands of residents near composting facility); *Averett v.
Metalworking Lubricants Co.,* No. 1:15-cv-01509-JMS-MPB, 2017 U.S. Dist.
LEXIS 158184, at *1 (S.D. Ind. Sep. 27, 2017); *Dabney v. Taminco US, Inc.,* Case
No. 3:15-cv-533/MCR/EMT (N.D. FL); *Maroz v. Arcelormittal Monessen, LLC,*
No. 15-cv00771-AJS (W.D. PA Nov. 14, 2016); *Baynai v. City of Riverview,* Case
No. 12-0072979 (Wayne County MI Circuit Ct.).   *Alley et al v. Western Sugar
Cooperative*, Case No. 2017CV30078 (Morgan Co. CO Dist. Ct.); *Hamilton et al
v. 3D IdaPro Solutions, LLC*, Case No.: 3:18-cv-00054-jdp (W.D. Wisc.); *Keech et
al v. Sanimax USA, LLC*, Case No 0:18-cv-00683-JRT-HB (D. Minn); *Buczynski v.
Comprehensive Environmental Solutions*, Case No. 08-13559-AC-MKM (E.D.
Mich); *Ward et al. v. U.S. Steel*, Case No. 04-74654-AC-DAS (E.D. Mich);
*Szcuzukowski v. LA Pac Corp*, Case No. 03-10007-DML (E.D. Mich); *Snow, et al
v. Atofina Chem Inc,* Case No. 01-72648-VAR (E.D. Mich.); *Gardner, et al v.
Lafarge Corp*., Case. No. 99-10176-DML (E.D. Mich.); *Brindley v. Severstal*,
Wayne County MI Circuit Court Case No. 07-704488-NZ; *Waldron v. Republic
Services of Michigan*, Wayne County MI Circuit Court Case No. 06-615173-NZ;
*Mauk v. Auto-Alliance*, Wayne County MI Circuit Court Case No. 06-603618-CZ;
*Hawkins v. EQ Recovery Resources*, Wayne County MI Circuit Court Case No. 05-
523503-NI;  *Brush v. CWC Textron*, Muskegon County MI Circuit Court Case No.
04-42918-NZ; *Harker v. Sappi Paper Co*., Muskegon County MI Circuit Court
Case No. 03-42512-NZ; *Beaushaw v. Monitor Sugar Co*., Bay City MI Circuit
Court Case No. 03-3595-NZ; *Compora v. IKO Monroe, Inc*., Monroe County
Circuit Court case no. 00-11245-NZ; *Dunlop v. Edward C. Levy Corp*., Wayne
County MI Circuit Court Case No. 00-000629 NZ; *Pederson v. Sybill Inc*., Wayne
County MI Circuit Court Case No. 99-940649-NZ; *Caines v. Marathon Oil*, Wayne
County MI Circuit Court Case No. 99-940648 NZ; *Weiss v. Rouge Steel*, Wayne
County MI Circuit Court Case No. 98-816224-NZ; *Howell v. Quaker Chemical
Company*, Wayne County MI Circuit Court Case No. 97-731404 CZ.

(**Ex. 1**, ¶3). This experience prepared Class Counsel to be able to evaluate the merits of each individual noxious air pollution cases effectively and efficiently. (*Id.*, ¶8).

The informal discovery in this case, combined with Plaintiffs' Counsel's substantial experience in similar cases, has allowed Plaintiffs' counsel to fairly weigh the benefits of the Settlement against the risks and delay of continued litigation in deciding to recommend the Settlement.  Despite the early stage of this litigation at the time of settlement, the Parties had an adequate appreciation of the merits of the case before negotiating this $800,000 Settlement, which is fair, adequate, and reasonable based on the specific facts of this case.

### 4.       Risks of Establishing Liability and Damages

The fourth (risk of establishing liability) and fifth (risk of establishing damages) *Girsh* factors are "closely  related" and are therefore properly  addressed together. *See In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 744 (E.D. Pa. 2013) (noting "these two *Girsh* factors are  closely related, so I will address them together."). "These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *Prudential*, 148 F.3d at 319).

Here, Defendant expressed its intent to aggressively oppose, and absent settlement would have opposed, class certification, liability, and damages. A loss in any of the three aspects would likely serve as the death knell for most or all of the claims of the Class. Even if Plaintiffs were able to obtain class certification, they would have to affirmatively establish the spread of Defendant's emissions and that those emissions were of such frequency, intensity, and duration to constitute a nuisance. Defendant would likely point to every industrial facility within miles a

possible source of the odors that the Class would testify to and challenge every aspect of Plaintiffs'

proof of Defendant's emissions. This would involve competing scientific testimony of sufficient

complexity that the ultimate outcome would be anything but certain.

Further, Defendant would be likely to vigorously oppose Plaintiffs' evidence on damages,

including through the use of experts. Determining the damages attributable to a nuisance requires

that those damages be isolated from numerous other factors that impact value. One can be sure

that Defendant would have offered evidence of countless other factors, real or hypothetical,

claiming that much or all of any loss in value claimed to be attributable to the Nestle Facility was

actually caused by those other factors.

After considering the range of possibilities, it is Class Counsel's experienced opinion that

given the potential risks, rewards and costs of continuing litigation, that settlement on the

proposed terms is the most desirable course for Plaintiffs and the Class to take.

### 5.    Risks of Maintaining the Class Action through Trial

"[T]his factor measures the likelihood of obtaining and keeping a class certification if the

action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d. Cir.

2004). "The value of a class action depends largely on the certification of the class because, not

only does the aggregation of the claims enlarge the value of the suit, but often the combination of

the individual cases also pools litigation resources and may facilitate proof on the merits. Thus,

the prospects for obtaining certification have a great impact on the range of recovery one can

expect to read from the action." *GM Trucks*, 55 F.3d at 817. "A district court retains the authority

to decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In*

*re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. Thus, "the significant risk that the class

would be decertified if litigation proceeded weighs in favor of settlement." *Id.*

Plaintiffs continue to believe that class certification would have been appropriate in this case even absent settlement. But Plaintiffs also recognize that class certification, particularly in an environmental case, is anything but certain. While class actions have become increasingly difficult to certify in general, some courts have extended that difficulty to class actions in particular. *See Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (WD. Ky. 2008); *see also Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept 2, 2008). Therefore, beyond the "rigorous analysis" standard now employed in Rule 23 class actions, Plaintiffs recognize that they faced significant risk in obtaining class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remain. These risks highlight the propriety of resolving the case on terms favorable to the class before the issue of class certification must be decided.

Specific concerns relating to class certification in environmental pollution cases weigh even more heavily in favor of approving this settlement under this factor. Numerous courts have rejected class certification petitions (without prejudice) in similar cases. *See Hamilton v. 3D Idapro Sols., LLC*, 2019 U.S. Dist. LEXIS 128217, *14 (D. Wis. Aug. 1, 2019) (denying class certification without prejudice and requiring the plaintiff to submit further evidence of commonality on the issue of causation); *see also Brooks v. Darling Int'l, Inc.*, 2017 U.S. Dist. LEXIS 49660, *42 (E.D. Cal. March 30, 2017) (denying class certification without prejudice but finding that the superiority of class litigation is clear because "if class certification were to be denied, the only alternative for the putative class members would be to bring actions in their individual capacities, which would waste the resources of the parties and the court."). Numerous factual circumstances can impact the ability to maintain air pollution class actions through trial,

23

and the risk of decertification remains omnipresent at every step along the way. These class certification-related costs and litigation risks merit approving the settlement as fair, reasonable, and adequate here.

**6.      Ability of the Defendant to Withstand a Greater Judgment**

As the *In re Flonase Antitrust Litig.* court recognized, "[t]he ability of defendants to withstand a greater judgment generally only comes into play when a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 744 (E.D. Pa. 2013) This factor is not relevant in the instant case. While Defendant is part of a large corporate entity that could no doubt withstand judgment larger than the Settlement, the benefits provided under the Settlement Agreement are substantial and merit approval on their own terms.

**7.      Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)." *GM Trucks*, 55 F.3d at 806. "This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *Id.*; *see also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 224, 2014 U.S. Dist. LEXIS 36532, *75-76 (E.D. Pa. 2014) (noting these elements "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case"). This Settlement does not involve a sell-out on an otherwise strong case, and it should be approved.

In this case, substantial monetary relief in the amount of $800,000 is being provided to the Class under the Settlement Agreement. Odor nuisance cases generally do not resolve in the eight-

figure range, and Plaintiffs' experienced counsel are aware of no class action involving nuisance odors alone that has. (**Ex. 1**, ¶10). The relief obtained through this Settlement compares very favorably to other similar L&D settlements in industrial air pollution class actions. A few recent examples of similar resolutions reached by Class Counsel at L&D, and approved by other courts, include: *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement with no facility improvements); *Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement with no facility improvements); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct.) (final approval of $950,000 settlement with no facility improvements); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement with no facility improvements).

L&D is highly experienced in litigation of this type, and the $800,000 relief obtained here compares very favorably considering all the attendant circumstances, which includes a significant decrease in the number of odor complaints from residents following Defendant's investment in new odor mitigation technologies. (**Ex. 1**, ¶12-13). More importantly for this analysis, the best possible recovery that could reasonably be expected would not greatly exceed the value of the present Settlement, and the final fairness decision must ultimately weigh the significant factual, legal, and procedural risks that are present.

## IV.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AMOUNTING TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE.

Plaintiffs hereby request a standard attorneys' fee amounting to one-third of the common fund as compensation for the work that Class Counsel performed to obtain this highly beneficial settlement and to account for the risk that Class Counsel assumed on behalf of the Allentown

community. As the Third Circuit has recognized, attorneys who create a common fund benefit for a class are entitled to a reasonable fee to be paid from this fund. *In re Diet Drugs Prods. Liability Litig.*, 582 F.3d 524, 546 (3d Cir. 2009) ("Under the common benefit doctrine, an award of attorney's fees is appropriate where plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class.") (citations omitted); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Prudential Ins. Co. American Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("*Prudential*")); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 (E.D. Pa. 2008) ("In class cases, counsel who recover a common fund settlement such as this are entitled to reasonable attorneys' fees paid from the fund.") (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The common fund approach is preferred because "[a]pplication of the common fund doctrine 'prevent[s] … inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.'" *In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. at 220 (citing *Boeing*, 444 U.S. at 478). As noted by another Court in this district in approving a motion for a fee award in the connection with the class action settlement before it, "[f]or many years, both the Supreme Court and our [Third Circuit] Court of Appeals have favored calculating attorney's fees as a percentage of the class recovery." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *4 (E.D. Pa. Jan. 24, 2011) (citations omitted).

The Third Circuit established ten factors for courts to consider in evaluating a request for attorneys' fees. These factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the

settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See In re Rite Aid Secs. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (citing G*unter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). The Third Circuit has identified three other potentially relevant factors in determining the fairness of a fee petition: (8) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *Prudential*, 148 F.3d at 338-340. However, these factors "need not be applied in a formulaic way ... and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1; *see also In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013). "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Prudential*, 148 F.3d at 342.

This Court has determined that "***courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses***." *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, *40, Fed. Sec. L. Rep. (CCH) P93, 229 (E.D. Pa. April 18, 2005) (emphasis added) (citing, *e.g.*, *In re CareSciences, Inc. Sec. Litig.*, Civ. A. No. 01-5266 (E.D. Pa. Oct. 29, 2004) (order approving award of attorneys' fees and expenses amounting to one-third recovery of $3.3 million settlement fund, plus expenses); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *cf. In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("In private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate

agreements providing for between thirty and forty percent of any recovery."). Plaintiffs request a typical award of one-third of the Gross Settlement Proceeds ($259,886) for Class Counsel, who provided the necessary expertise and skill to efficiently advance Plaintiffs' cause and procure this beneficial settlement for the Class.

### A.    The Size of the Fund Created and the Number of Persons Benefitted

The value of the benefit rendered to the Class is an important factor in determining whether the fee requested is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also GM Trucks*, 55 F.3d at 821 ("the court apportions the [settlement] fund . . . in a manner that rewards counsel for success"). In assessing the proposed Settlement, the Court should consider that "[a] settlement is, necessarily, a compromise between plaintiffs, who did not win their case, and defendants, who did not lose theirs." *Snell v. Allianz Life Ins. Co. of N. Am. & Fidelity Union Life Ins. Co.*, No. 97-cv-2784, 2000 WL 1336640, at *17 (D. Minn. Sept. 8, 2000) (internal citations omitted).

Here, the Settlement Fund of $800,000 provides a substantial benefit to the Class as compensation for the alleged past property damages incurred during the Class Period. About 340 timely and valid claim forms have already been received by Class Counsel, and it is anticipated that the monetary distributions to each claimant from the Net Settlement Proceeds will be significant and amount to more than $1,000. Such a monetary recovery is easily within the reasonable range of anticipated recovery for an individual claimant alleging nuisance-related property damages resulting from industrial odors. Further, obtaining a recovery like this for more than 300 people is an outstanding litigation result that warrants approval of the settlement and the requested attorneys' fee.

B.      **The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel**

Not one of the Class Members objected to Plaintiffs' requested attorneys' fee. This Court has previously stated that it is "important to note that there have been no objections to the request for attorneys' fees or expenses, or to the settlement itself. This is significant evidence that the proposed fee request is fair." *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680 at *40, Fed. Sec. L. Rep. (CCH) at 229. Here, the total lack of objections to the requested attorneys' fee of one-third is significant evidence that the "typical" one-third fee plus litigation expenses is fair and should be approved.

C.      **The Skill and Efficiency of the Attorneys Involved**

The Third Circuit acknowledges the importance of the skill and efficiency of the attorneys in fee determinations because "the stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *In re Flonase Antitrust Litig.*, 291 F.R.D. at 104 (citing *Gunter*, 223 F.3d at 198); *see also In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996)("As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974)). In short, the "single clearest factor reflecting the quality of class counsels' service to the class are the results obtained." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000); *see also In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009) (noting "the quality of representation in a case can be measured by the

quality of the result achieved."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at \*5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.").

Here, Class Counsel is among a very small number of attorneys who handle this type of complex litigation, which is risk intensive and has numerous factual and legal hurdles that most legal practitioners avoid. Class Counsel obtained a significant recovery for the Class in a relatively short period of time and did so while conserving resources and avoiding costs that would have detracted from the Class' ultimate recovery. Nuisance/Negligence claims alleging property damages for the interference with the use and enjoyment of private property are rarely, if ever, economically feasible to litigate on an individual basis. Thus, had Class Counsel not undertaken to litigate these claims, it is overwhelmingly likely that no Class Member would have sought or obtained any relief through litigation, monetary or otherwise. This reality counsels heavily in favor of granting Class Counsel's fee request, as it rewards Class Counsel for undertaking socially important but "risky, complex and novel litigation." *In re Flonase Antitrust Litig.*, 291 F.R.D. at 104.

### D.    The Complexity and Duration of the Litigation

While settlement has avoided the need for Class Counsel to spend thousands of hours litigating this case, the other factors counsel in favor of the requested fee award. Environmental class actions are complex, risky, and relatively novel. The issues and evidence involved are highly technical and specialized, and in many ways the case law is underdeveloped and/or obscured by unrelated common law causes of action. Class Counsel has experience navigating these complex and novel issues and has used that experience to achieve a substantial benefit for the Class, which they did efficiently and to great effect for the Class. Class Counsel also conducted an extensive

investigation into this case and provided vigorous and knowledgeable advocacy throughout the settlement negotiations. Though this case unfolded over a period of time just under a year, Class Counsel remained extremely active at all times throughout, as evidenced by the number of hours expended by class counsel and the informal discovery record developed in the case that permitted the parties to reach this highly beneficial settlement.

### E.      The Risk of Nonpayment

Courts have long recognized that there is some degree of risk that attorneys will receive no fee – or at least a fee that does not reflect their efforts – when representing a class, as this risk is inherent when undertaking any contingency fee action. *See, e.g.*, *In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. at 223 ("Any contingency fee [arrangement] includes a risk of no payment"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) (same). "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, *19, 2012 WL 1964451 (D.N.J. May 31, 2012).

The risk of non-payment, or extreme underpayment, in cases like this is high. Environmental class litigation always carries a risk that the case cannot be successfully litigated at trial on a class-wide basis. Class Counsel undertook to litigate this case on an entirely contingent basis. In addition to hundreds of hours of time, Class Counsel expended approximately $19,340 in costs. In the entirely possible scenario in which no recovery was obtained, Class Counsel would have received nothing in return for these efforts. Therefore, the requested fee properly rewards Counsel for having undertaken the risk associated with litigating this case and obtaining benefits for the Class.

### F.      The Amount of Time Devoted to the Case by Plaintiffs' Counsel

Class Counsel has spent hundreds of hours litigating this case. (**Ex. 1**, ¶25). Conservatively, and without consideration for the hours dedicated to the present motion or the administration of the settlement that would unfold in the coming weeks, Class Counsel has collectively expended 228.2 hours to this case and significant non-attorney staff time that could not be dedicated to other matters. (**Ex. 1**, ¶25). While this settlement was reached in a relatively efficient manner, this result was only made possible because of Class Counsel's prior experience, skill, knowledge of the applicable law, and diligent pre-suit investigation. As discussed below, the number of hours expended by Class Counsel at their customary hourly rate, and after appropriately accounting for the risk taken on by Class Counsel in advancing Plaintiffs' cause, supports the requested one-third attorneys' fee.

## G.    The Awards in Similar Cases

As discussed *supra*,[12] the award in this case compares very favorably to other court-approved industrial air pollution settlements, each of which involved significant discovery and motion practice prior to mediation and settlement. Additionally, most of the similar cases cited involved smaller class areas, and thus a lower per-household payment from the common settlement fund. The compensation that the Class will receive here is outstanding, particularly given the factual circumstances underlying this case.

## H.    The Value of Benefits Accruing to Class Members Attributable to the Efforts of Class Counsel as Opposed to the Efforts of Other Groups, such as Governmental Agencies Conducting Investigations

---

[12] *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement with no facility improvements); *Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement with no facility improvements); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct. with no facility improvements) (final approval of $950,000 settlement); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement with no facility improvements).

The $800,000 settlement fund alone is sufficient to declare this settlement fair, reasonable, and adequate under Rule 23(e)(2). However, Plaintiffs' lawsuit has kept pressure on Nestle to ensure that the facility improvements that it installed are working properly and has created an incentive for the company to implement additional odor mitigation efforts. Although the common settlement fund is the primary benefit inuring to the Class, Class Counsel's efforts in this litigation have positively impacted quality of life for the entire Class Area by ensuring direct accountability from the company, whose risk would increase substantially if odor complaints continued to increase as they had been prior to initiation of this litigation in addition to compensation for past damages for the historical nuisance odors.

## I.    The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel Was Retained

As this Court has noted, "*Prudential* asks courts to consider fee arrangements that were negotiated in private contingent fee agreements." *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 U.S. Dist. LEXIS 172214, *25. "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). Thus "[t]he goal of the fee setting process is to determine what the lawyer would have received if he were selling his service in the market rather than being paid by Court Order." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *15 (E.D. Pa. June 2, 2004). Consequently, courts should look to the private market when assessing the reasonableness of the percentage fee. With respect to this factor, courts in this district have recognized that "[i]n private contingency fee cases, lawyers routinely negotiate agreements for between 30% and 40% [] of the recovery." *In re Certainteed Fiber Cement Siding*

33

*Litig.*, 2014 WL 1096030, at \*26 (citing *Esslinger*, 2012 U.S. Dist. LEXIS 165773, 2012 WL 5866074, at \*14). This Court similarly recently recognized, "fees of 30% or more are common." *In re Hemispherx Biopharma, Inc.*, 2011 U.S. Dist. LEXIS 172214, \*25.

In this case, the requested fee award is one-third (33%) and represents a typical contingent fee negotiated on the private market. Indeed, the retainer agreement entered between Plaintiffs and Class Counsel in this case called for counsel to cover all costs and risks of the litigation in exchange for a contingent fee recovery of 35% if settlement prior to trial certification or 40% if settled thereafter or if tried. (**Ex. 1,** ¶23). Accordingly, the requested fee is less than the amount privately negotiated with Plaintiffs and less than the amount for which Class Counsel's services were sold on the market. This factor strongly supports approval of a one-third fee because it will roughly "award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

### J.       Innovative Terms of Settlement

This factor is not particularly relevant here. While the Settlement involves significant monetary relief, that type of relief is typical in nuisance air pollution cases seeking abatement and/or damages, depending on the underlying factual circumstances of each case. However, in view of the overwhelming support the other factors lend to Class Counsel's fee request, as the other factors outweigh this factor. *See Gunter*, 223 F.3d at 195 n.1.

### K.       Lodestar Cross-Check

While Class Counsel's fee is reasonable in light of all of the applicable factors, a lodestar cross-check is a "suggested practice" in the Third Circuit. *See In re Cendant Corp., PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001)). The Third Circuit notes that "while useful, [this cross-check]

34

should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp.*, 455 F.3d 160,164 (3d Cir. 2006). "[T]he lodestar cross-check calculation need entail neither mathematical precision nor beancounting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-307 (3d. Cir. 2005).

"[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]'" *Prudential*, 148 F.3d at 341 (quoting 3 Herbert Newberg & Albert Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)); *In re Certainteed Fiber Cement Siding Litig.*, 2014 WL 1096030, at *27 (same). "Indeed, multiples ranging from 1 to 8 are often used in common fund cases." *Stevens v. SEI Invs. Co.*, 2020 U.S. Dist. LEXIS 35471, *39-40, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) (citing cases).

Here, the raw lodestar calculation results in a figure of $104,550. (**Ex. 1**, ¶25). The division of this number into Class Counsel's requested fee of $259,886 results in a multiplier of approximately 2.525, which is squarely in the middle of the standard 1-4 range commonly awarded in courts across the country and on the low end of the 1-8 multiplier range "often" approved by this court. (*Id.*, ¶26). Therefore, the lodestar cross check confirms the reasonableness of Class Counsel's fee request.

## V.      REIMBURSEMENT OF CLASS COUNSEL'S EXPENSES IS WARRANTED.

It is well established that counsel who create a common fund like the one in this Action are entitled to reimbursement of litigation costs and expenses. *See* Fed. R. Civ. P. 23(h). Courts in the Third Circuit have recognized that attorneys who create a common fund for the benefit of a class are also entitled to reimbursement of reasonable litigation expenses and costs from the fund. *See, e.g.*, *Fleisher*, 2014 WL 866441, at *15; *Ikon Office Solutions, Inc.*, 194 F.R.D. at 192 (internal

citations omitted); *In re Datatec Sys., Inc. Secs. Litig.*, No. 04-cv-525, 2007 WL 4225828, at *9 (D.N.J. Nov. 28, 2007) (approving litigation expenses of $45,409.63 which reflect "costs associated with experts, consultants, investigators, legal research, mediation, meals, hotels, transportation, word processing, court fees, mailing postage, telephone"); *In re Safety Components, Inc. Securities Litig.*, 166 F. Supp. 2d 72, 91 (D.N.J. 2001) (finding counsel entitled to reimbursement of expenses "that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action").

Here, Class Counsel requests reimbursement of $19,340. (**Ex. 1**, ¶22; **Ex. 1(C)**). These expenses are eminently reasonable considering that Class Counsel has borne the entire cost of providing the class notice and administering the Settlement. Class Counsel has done an exceptional job of keeping costs low in this case, ensuring the largest possible recovery for the Class. The request for reimbursement of actual costs is reasonable and should be approved.

## VI.   THE   REQUESTED   $1,000   SERVICE   AWARD   FOR   THE PLAINTIFFS/CLASS REPRESENTATIVES IS REASONABLE.

"Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d at 751 (quotations omitted); *In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. at 225 ("The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund."). The *Flonase* court recognized that "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation," noting it is done "as a matter of practice." 951 F. Supp. 2d at 751. As other courts within this district have recognized, "there would be no benefit to Class members if the Class representative had not stepped forward." *See Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 424 (E.D. Pa. 2010) (approving

36

contribution award where class representative "devoted time and energy to the litigation, consulting with counsel as necessary, and fulfilled his obligations as Class representative"). *See also In re Imprelis Herbicide Marketing Sales Practice & Prods. Liability Litig.*, 296 F.R.D. 351, 371 (E.D. Pa. 2013) (noting incentive awards "reward the public service of contributing to the enforcement of mandatory laws.").

Plaintiffs request a modest service award of $1,000 for Mr. and Mrs. Fuehrer. These service awards are warranted as a matter of public policy and are well supported by applicable authority. *See generally In re SmithKline Beckman Corp. Secs. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990). The efforts the Plaintiffs in stepping up to pursue this important litigation have achieved substantial benefits for the Class and merit the requested service awards.

## VII.     CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their Unopposed Motion and enter the [Proposed] Final Order Approving Settlement (attached as **Exhibit 2**), finally (i) approving and certifying the Settlement Class; (ii) designating Plaintiffs Mark and Lori Fuehrer as the Class Representatives of the Settlement Class; (iii) designating Kevin S. Riechelson, Steven D. Liddle, Laura L. Sheets, and Matthew Z. Robb as Class Counsel for the Settlement Class; (iv) ordering that the notice of the proposed Settlement satisfied the requirements of due process and Fed. R. Civ. P. 23(e); (v) determining that the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e); (vi) ordering that all Class Members who elected to opt-out shall not be bound by the Settlement; (vii) overruling the lone objection to the Settlement; (viii) awarding an incentive fee of $1,000 to Plaintiffs Mark and Lori Fuehrer; and (ix) awarding attorneys' fees to Class Counsel in the amount of $259,886 and reimbursement of litigation expenses to Class Counsel in the amount of $19,340.

Dated: June 18, 2021                     **LIDDLE & DUBIN, P.C.**

/s/Steven D. Liddle
Steven D. Liddle *(Pro Hac Vice)*
Laura L. Sheets *(Pro Hac Vice)*
Matthew Z. Robb (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, Michigan  48207
(313) 392-0025

KAMENSKY COHEN & RIECHELSON
KEVIN S. RIECHELSON
Kamensky, Cohen & Riechelson
194 S. Broad St.
Trenton, NJ 08608
(609) 394-8585
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 18, 2021

By: /s/Matthew Z. Robb